**STEWART TITLE GUARANTY COMPANY, Appellant,**

v.

**Dawson STERLING, Trustee, Appellee.**

**No. C14–87–00309–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 18, 1989.

Eugene J. Pitman, Houston, for appellant.

Thomas T. Hutcheson, Roland M. Chamberlin, Jr., E. John Gorman, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

Stewart Title Guaranty Company [hereinafter Stewart] complains of a judgment against it in an unfair claims settlement and deceptive trade practices action brought by W. Dawson Sterling, Trustee [hereinafter Sterling]. We affirm the judgment of the trial court.

In July of 1983, Sterling purchased a large tract of land he intended to develop into a residential sub-division. As part of that purchase, Sterling sought to acquire title to three water district lots. His ownership of these lots was essential to ensure his ability to control the water district board of directors, who in turn control the installation of utilities in the development area. Stewart was to supply title insurance for all the property, including the three all-important water district lots.

Prior to closing, Sterling noticed a discrepancy between the Policy Commitment given to him by Stewart and a survey of the property in question. The survey indicated that the three water district lots did not belong to the seller with whom Sterling had been negotiating. Sterling alerted Stewart to this discrepancy. Despite the existence of three recorded general warranty deeds establishing title in persons other than the seller, and the fact that proof of such ownership was actually in Stewart's files, Stewart assured Sterling the lots would be included in the deal.

At the closing, Sterling was repeatedly assured by a Stewart employee, Cameron, that he would be receiving "good and indefeasible title" to all the property, including the critical water district lots. Following those assurances, Sterling proceeded with the closing. Sterling was required to sign a "Waiver of Inspection", which stated that Stewart's policy would except from coverage the rights of parties in possession, "the existence of which does not appear of record." The Policy Commitment Sterling

had previously received did not contain such a clause. However, the policy actually issued by Stewart did contain the clause. Significantly, the qualifying language, "the existence of which does not appear of record," which was included in the waiver signed by Sterling, was omitted from the policy issued to him.

When it became clear Sterling's title to the three lots was defective, he filed a claim on his title policy. Stewart denied his claim and sought a declaratory judgment against him. Sterling then filed suit against Stewart; the seller, Equitable; and the seller's attorneys, Butler & Binion. The cases were consolidated and proceeded to trial. After the trial began, Equitable and Butler & Binion settled with Sterling, and the jury was informed of the settlement.

The trial court based its judgment against Stewart on the following jury findings: Stewart had knowingly engaged in an unfair settlement practice that was a producing cause of damage to Sterling; Stewart knowingly engaged in improper trade practice that was also a producing cause of damage to Sterling; Sterling sustained two-hundred thousand dollars in actual damages; and Sterling should receive three-hundred and forty-five thousand dollars in reasonable and necessary attorney's fees.

■ In its first point of error, Stewart asserts the trial court erred in submitting special issues asking whether Stewart had engaged in unfair claims settlement practice, and whether that conduct was the producing cause of damage to Sterling. Stewart objected to this issue contending there was no evidence, or insufficient evidence to support its submission. Stewart argues no such private cause of action exists and, alternatively that, even if a private cause of action exists, there is no evidence that the conduct occurred with such frequency as to indicate a general business practice.

Stewart is correct in stating TEX.INS.CODE ANN. art. 21.21–2 (Vernon 1981) does not itself create a private cause of action. However, Sterling sought relief under TEX. INS.CODE ANN. art. 21.21, § 16 (Vernon Supp.1989) and TEX.BUS. & COM.CODE ANN. § 17.50 (Vernon 1987). [Sections 17.41—17.826 of the Business and Commerce Code are more commonly referred to as the Deceptive Trade Practices Act, or DTPA].

The Texas Supreme Court has permitted litigants to incorporate the article 21.21–2 definitions of unfair claims settlement into actions for damages brought under article 21.21, § 16 and section 17.50 of the DTPA. *Vail v. Texas Farm Bureau Mutual Insurance Co.*, 754 S.W.2d 129 (Tex.1988). Further, the *Vail* court held proof of frequency of the unfair activity was not a requisite element of any of the acts defined in article 21.21–2. *Vail*, 754 S.W.2d at 134. The Texas Supreme Court said article 21.21, § 16 of the Insurance Code makes actionable any violation of section 17.46 of the DTPA, and article 21.21 incorporates any practice determined to be false, misleading, or deceptive. *Vail*, 754 S.W.2d at 135.

Accordingly, Sterling brought a cognizable action against Stewart, and in light of *Vail*, Stewart's complaints as to the lack of evidence establishing frequency of misconduct are inapposite. So long as there was some evidence to support Sterling's claim of unfair settlement practice, submission of special issues number five and six was proper. *Brown v. Goldstein*, 685 S.W.2d 640, 641 (Tex.1985); *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965).

Special issue number five read as follows:

Do you find from a preponderance of the evidence that Stewart Title Guaranty Co. engaged in any unfair claims settlement practice with respect to Dawson Sterling?

Answer "Yes" or "No."

ANSWER: Y[es]

You are instructed that the term "unfair claims settlement practice" is defined as any one of the following acts or omissions:

(a) Misrepresenting to W. Dawson Sterling pertinent facts or policy provisions relating to coverages at issue.

(b) Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become clear.

(c) Compelling W. Dawson Sterling to institute suit to recover amounts due under his policy by offering substantially less than the amounts ultimately recovered in suit brought by him.

(d) Failing to provide promptly to W. Dawson a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim.

Stewart also contends there was no evidence to support submission of the related issue as to whether the conduct was the producing cause of Sterling's damages. Though Stewart also contends the evidence was insufficient to support submission of the issues, such a contention is inapplicable and will not be addressed. *Brown*, 685 S.W.2d at 641.

■ Although there was ample evidence from Stewart's own employees to support submission of the unfair settlement practice issue, Sterling's testimony also raised the issue. He testified at length as to misrepresentations made by Stewart concerning the title he would receive and the title insurance coverage guaranteed. It was for the jury, as trier of the facts, to decide the weight to attach to his testimony. *Rego v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) Thus, solely on the basis of Sterling's testimony, the trial court was correct in submitting the issue to the jury.

Next, Stewart challenges the factual sufficiency of the evidence to support the jury's affirmative findings on special issues five and six. When reviewing questions of factual sufficiency, we must consider and weigh all the evidence, both in support of and contrary to the challenged findings. The jury's findings must be upheld unless we find the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *In re King's Estate*, 150 Tex. 662,

244 S.W.2d 660, 661 (1951). We may not substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 896 (1951); *Thomas v. Wooten*, 650 S.W.2d 499, 501 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Further, the jury as the trier of the facts is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Rego*, 682 S.W.2d at 680.

■ The record before this court is filled with evidence from which the jury could have determined Stewart engaged in the kind of acts or omissions defined in special issue number five. Stewart's own employees testified to the following: Sterling was falsely told at the closing he was getting indefeasible title to the property, including the three water district lots; Stewart's title examiner overlooked numerous documents showing record title which preclude Sterling's ownership of the water district lots; evidence of the true record title was actually in Stewart's own files, including copies of recorded warranty deeds to the three water district lots; the exception language in the waiver of inspection signed by Sterling and the language in the policy actually issued differed significantly; and the policy exception on which Stewart based its denial of Sterling's claim was not in accordance with the language required by the Board of Insurance. Further, Stewart's vice-president and claims counsel testified that the policy was illegal because it attempted to exclude coverage for title defects not disclosed to Stewart in writing, even if the defects were disclosed by public records. According to policy forms promulgated by the State Board of Insurance, Stewart could only exclude from coverage those defects "not shown by the public records."

Sterling and Stewart offered conflicting versions of the Policy Commitment issued to Sterling. The jury was entitled to believe that the version offered by Sterling, which did not contain an exception as to rights of parties in possession, was in fact the Policy Commitment Sterling received. Further, although Stewart's version did

contain the exception, the clause makes express reference to the Waiver of Inspection, which limits its application to those whose interests do not appear of record. The record is clear that ownership of the water district lots appeared of record, and that Stewart had actual knowledge of those facts.

There is ample evidence in the record to support the jury's answers to special issues five and six. Point of error number one is overruled.

In its second point of error, Stewart alleges there was no evidence to support the submission of special issues seven and eight, which ask whether Stewart engaged in any improper trade practice and whether that conduct was a producing cause of Sterling's damages. Sterling also asserts there was insufficient evidence to support the jury's affirmative answers to the issues.

Special issue seven read as follows:

Do you find from a preponderance of the evidence that Stewart Title Guaranty Co. engaged in any improper trade practice with respect to the business of insurance?

.     .     .     .     .

■ Article 21.21, § 16 makes actionable any unfair or deceptive act or practice "with respect to the business of insurance", and encompasses any violation of section 17.46 of the DTPA. *Vail*, 754 S.W.2d at 135. Section 17.46 encompasses any type of business activity that deceives consumers. *Id.* To justify submission of special issues number seven and eight, Sterling needed only to submit some evidence that a deceptive act or practice occurred. As illustrated by the discussion of the previous point of error, there was ample evidence presented to require submission of these issues.

■ Stewart also objected to the wording of the issue, arguing the language should have specified that the inquiry was limited to improper trade practices with respect to the business of *title* insurance. We hold that the objection was properly overruled. Article 21.21, § 16 encompasses "any unfair or deceptive act or practice *with respect to the business of insurance.*" *Vail*, 754 S.W.2d at 135. The language of special issue seven correctly reflects the legal issue.

The jury obviously understood Stewart's business was providing title insurance and that the salient questions before them involved the particular title policy issued to Sterling. Their answers to special issue number one make that clear. The jury found that Stewart had represented to Sterling its *title insurance policy* would confer or involve rights, remedies or obligation which it did not have or involve, or which were prohibited by law; that Stewart had represented to Sterling that its *title insurance policy* would have characteristics, uses, or benefits which the policy did not have; that Stewart had failed to disclose information to Sterling concerning its *title insurance policy*, information which was known at the time of the transaction, and this failure to disclose was intended to induce Sterling to enter into the transaction, and that he would not have entered into the transaction had the information been disclosed; that Stewart represented to Sterling the deed he would be receiving at closing would confer rights, remedies or obligation that it did not have; and that Stewart represented to Sterling that his title to the property would have characteristics, uses or benefits which it did not have, or which were prohibited by law.

■ Stewart cites a number of cases it asserts establish it had no duty to disclose to Sterling the results of the title search. We disagree. The authorities cited involve negligence claims, and clearly state Stewart had no duty to *discover* and disclose the title defects, only to act as indemnitor against failure of title. However, those holdings cannot be stretched to support Stewart's position it can not be liable under article 21.21, § 16 for misrepresentations and nondisclosures of material facts. *Cf.*, *Gibbs v. Main Bank of Houston*, 666 S.W.2d 554, 560 (Tex.App.—Houston [1st Dist.] 1984, no writ) (holding the same negligence-related authorities to be inapplicable to DTPA claims for misrepresentation

or nondisclosures by a title company). We find that Stewart had a duty to disclose its knowledge of prior recorded ownership of the three lots.

Ours is not the role of the fact finder. It was for the jury to determine the credibility of the witnesses and weigh the evidence. We do not find the evidence in support of special issues seven and eight was so weak, or the jury's findings so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. Therefore, point of error number two is overruled.

Stewart's third point of error attacks the submission of special issue number nine, which read as follows:

Special Issue No. 9

What amount of money do you find from a preponderance of the evidence constitutes W. Dawson Sterling's actual damages, if any, that were produced by deceptive trade practices, unconscionable action or course of action, unfair claims settlement practice, or improper trade practice, if any, found by you to have been committed by Stewart Title Guaranty Company?

Answer in dollars and cents, if any.

Answer_____

You are instructed in arriving at your answer to Special Issue Number 9, you should consider as the measure of damages the following:

(1) fair market value on July 15 1983, of the property to which title failed

(2) any consequential damages which naturally resulted therefrom

Stewart's only objection to the issue was "[the issue] submits an improper or incorrect measure of damages and should be limited to the difference between the market value of that received and the market value of what was paid for it." Stewart has waived all other complaints concerning this special issue by failing to raise them in the court below. *Castleberry v. Branscum,* 721 S.W.2d 270, 276 (Tex.1986).

While Article 21.21, § 16(b)(1) specifically authorizes the recovery of actual damages, it provides no definition or measure of such damages. Since the Texas Supreme Court

has held article 21.21 incorporates any violation of section 17.46 of the DTPA, it is reasonable to define actual damages for misrepresentations violating the insurance code in the same manner as they are defined for violations of the DTPA. *See Frank B. Hall & Co. v. Beach, Inc.,* 733 S.W.2d 251, 265 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Accordingly, actual damages are those recoverable at common law. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

■ The measure of damages stated in Stewart's objection is simply a formula for arriving at the fair market value of the property to which title failed, exactly the measure of damages the jury was instructed to consider. Stewart concedes this type of "benefit of the bargain" is allowable at common law. *Leyendecker & Associates, Inc. v. Wechter,* 683 S.W.2d 369, 373 (Tex. 1984).

Stewart introduced into evidence the contract of sale. The contract established the purchase price of the entire tract of land was $521,189.00. The insurance policy in question provided coverage for the tract in that same amount. Certainly, the jury was justified in its finding that the fair market value of the tract at the time of closing was $521,189.00.

A professional appraiser testified the three pieces of property to which title failed were, at the time of closing, valued at $104,500; $97,000; and $98,500 respectively. Stewart introduced financial statements of Sterling's from which the jury could conclude the value of the three lots was $311,000. The jury found the fair market value of the three lots at the time of closing to be $310,000. The record also includes a letter by a Stewart employee, Wright, indicating their own inspector valued the lots at between $200,000 and $250,-000. Sterling testified he raised his bid for the property by $325,000 to include the three water district lots.

Stewart's argument that the damages are incorrect, because Sterling's maximum

recovery should be limited to "the amount which bears the same ratio to the policy amount as the value of the outstanding interest bears to the value of the full title insured" is disingenuous. The policy amount is equal to the purchase price for the property, which is also the amount the jury found to be the fair market value for the entire tract.

There is ample evidence to support the jury's finding on actual damages. Assuming *arguendo* the accompanying instruction was somehow inadequate, after considering the pleadings, the evidence, and the charge in its entirety, it is clear that any error that might have occurred was harmless. *Island Recreational Development Corp. v. Republic of Texas Savings Assoc.*, 710 S.W.2d 551, 555 (Tex.1986). Point of error number three is overruled.

Stewart contends, in its fourth point of error, the trial court erred by not crediting the settlement proceeds paid by other defendants to the actual damages found by the jury. Stewart argues Sterling merely pled different theories of recovery against different defendants, all arising from the same injury. We do not agree.

■ Sterling recovered against Stewart for acts and misrepresentations violating article 21.21 of the Insurance Code. Neither the seller, nor its legal counsel, could have committed such violations. Any fraud or misrepresentation that might have been committed by the settling defendants concerning the sale of the property is a distinct injury from the one resulting from Stewart's misrepresentations concerning its insurance policy. Recovery under article 21.21 would not constitute recovery "for the same act or practice". *See Mayo v. John Hancock Mutual Life Insurance Co.*, 711 S.W.2d 5, 6–7 (Tex.1986). Further, there is no statutory right to contribution or indemnity from other defendants for violations of article 21.21.

■ Even if we agreed with Stewart's contention, it has waived any claim to a credit for the settlement proceeds. The Texas Supreme Court rejected the "one recovery" rule argued by Stewart, and adopted in its place a comparative causa-tion scheme. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 429–32 (Tex. 1984). The Supreme Court held the reasoning underlying the one recovery rule no longer applies, since the system of comparative causation allows allocation of liability among defendants, even when the injury itself is indivisible. *Duncan*, 665 S.W.2d at 431. The charge presented to the jury did not contain an issue on comparative causation. Where percentage of causation is not submitted and determined by the jury, there is no right to credit for settlement between plaintiff and other defendants. *See Acord v. General Motors*, 669 S.W.2d 111, 117 (Tex.1984). Stewart neither objected to the omission, nor requested such an issue or instruction. Therefore, it has waived the right to seek credit for the settlement between Sterling and the other defendants. Point of error number four is overruled.

■ Stewart's fifth point of error complains the special issue submitted on attorneys fees was improper because there was no segregation of the attorneys fees allocable to each of the original defendants. Sterling's attorney testified as to the number of hours worked and the fees charged by his firm. During his testimony copies of all the daily time logs for each attorney or paralegal working on Sterling's case were admitted into evidence. Also admitted were copies of the monthly bills sent to Sterling, as well as a summary of the voluminous time logs. Stewart did not object to the admission of any of this evidence. As this court held in *Osoba v. Bassichis*, 679 S.W.2d 119, 123 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), if Stewart believed Sterling was obligated to allocate the fees, it had a duty to object to the evidence as presented. Contrary to Stewart's assertion, merely asking questions during cross-examination concerning particular time entries included in previously admitted evidence preserves nothing for appeal. Accordingly, Stewart cannot now complain of Sterling's failure to segregate attorneys fees.

Stewart's only objection to the special issue on attorneys fees was as follows:

"[t]here has been no breakdown or allocation to the—of the fees incurred in connection with this Defendant, as well as numerous other Defendants, in order to show what is allocable as a reasonable amount for the prosecution of the suit against this Defendant." This objection addressed neither the propriety of submitting the issue, nor the wording of the issue itself, rather it was an untimely objection to the evidence underlying the issue.

The record clearly reflects there was ample evidence to support both submission of the issue and the jury's answer to it. Point of error number five is overruled.

 In its sixth point of error, Stewart complains of the admission of an excerpt from documents published for a seminar presented by Stewart. Throughout the trial, Stewart repeatedly claimed that the "rights of parties in possession" exception applied even when the parties in possession had recorded deeds. During questioning by Sterling's counsel, Stewart's vice-president and claims counsel denied Stewart took any different position. Sterling offered into evidence, over objection, a passage from literature prepared by Stewart for a seminar conducted in 1986. In the literature, Stewart stated the "rights of parties in possession" exception is *inapplicable* when those parties' interests are reflected by recorded documents. This evidence obviously undermined their entire trial posture.

Stewart argued the exhibit should not be admitted since it was prepared several years after the instant transaction, and following changes in insurance board regulations. However, these concerns go to the weight and not the admissibility of the evidence. Stewart was allowed to impeach the evidence by bringing these factors to the jury's attention. Further, any error which may have occurred was harmless. In light of the totality of the record, we do not find admission of this evidence probably caused rendition of an improper judgment. Tex.R.App.P. 81. Stewart's sixth point of error is overruled.

In points of error seven and eight, Stewart alleges the trial court erred in submitting certain subparts of special issues one, three, and four; and the entirety of special issues two, nine, ten and eleven. As the discussion of previous points of error illustrates, the evidence was sufficient to support submission of, and the jury's affirmative findings to, special issues nine and ten. The record before this court reveals copious evidence to support the submission of each of the other special issues challenged in points seven and eight. Points of error seven and eight are overruled.

In points nine, ten and eleven, Stewart complains of error in the submission of special issues thirteen, sixteen, seventeen, eighteen, twenty-one, and twenty-two. While there was ample evidence to support submission of these issues, as well as the jury's findings, none were relied upon to support the trial court's judgment. Points of error nine, ten and eleven are overruled.