Charles **SPENCER** and Sharon Spencer, Appellants,

v.

**EAGLE STAR INSURANCE COMPANY OF AMERICA, Appellee.**

No. 3–88–118–CV.

Court of Appeals of Texas, Austin.

Oct. 25, 1989.

Rehearing Denied Dec. 13, 1989.

Joe K. Longley, Mark L. Kincaid, Longley & Maxwell, Austin, for appellants.

Roger D. Higgins, Thompson, Coe, Cousins & Irons, Dallas, for appellee.

Before SHANNON, C.J., and GAMMAGE and JONES, JJ.

JONES, Justice.

This appeal presents the issue of what are proper jury questions in an unfair claims settlement practices case. Charles Spencer d/b/a Natural Furniture Store, and his wife, Sharon Spencer, sued Eagle Star Insurance Company of America (Eagle Star) for damages for alleged unfair claims settlement practices. The Spencers sued under several theories of liability, including breach of contract, violations of article 21.-21 of the Texas Insurance Code and rules and regulations promulgated thereunder, violations of the Texas Deceptive Trade Practices Act, and breach of the common-law duty of good faith and fair dealing. The dispositive issue in this appeal is whether the jury's affirmative answer to Question 1(A), as worded, is sufficient to support a cause of action under Texas law. The trial court concluded that it was not and rendered a take-nothing judgment, from which the Spencers appeal. We will affirm the trial court's judgment.

Because the outcome of this appeal does not turn on an evidentiary issue, an abbreviated summary of the facts is all that is required. The Spencers purchased an insurance policy from Eagle Star covering their family business, the Natural Furniture Store, against fire and other perils. The policy also provided business interruption coverage. On February 19, 1986, a fire destroyed the business. The Spencers made a claim on the Eagle Star policy for both loss of contents and loss of earnings. In July, after conducting an investigation into possible arson, Eagle Star paid the $70,000 policy limit on "contents" loss. Eagle Star did not offer payment on the business interruption coverage, however, until September 23, and did not unconditionally tender a payment of $27,994 until March 10, 1987. In the meantime, the Spencers filed this suit to recover additional damages for the delay in payment.

The case was submitted to the jury on seven questions. Question 1(A) and its accompanying definition stated as follows:

Was the handling of the Spencers' claim for loss of earnings by Eagle Star an unfair practice in the business of insurance?

"Unfair practice" means any act or series of acts which is arbitrary, without

justification, or takes advantage of a person to the extent that an unjust or inequitable result is obtained.

Answer "Yes" or "No"

ANSWER: Yes

In answer to Question 1(B), the jury failed to find that Eagle Star's handling of the Spencers' claim was unconscionable. In answer to Question 2, the jury found that the handling of the claim was a producing cause of damages. In answer to question 3, the jury failed to find that Eagle Star's handling of the claim was done "knowingly." The remaining questions related to damages or attorney's fees.

In response to Eagle Star's post-verdict motion for judgment or, alternatively, for judgment notwithstanding the verdict, the trial court concluded that Question 1(A) "does not support a judgment against the Defendant under our law," and rendered a take-nothing judgment.

### THE *VAIL* CASE

In five points of error, the Spencers assert that Question 1(A) did support a cause of action, and therefore a judgment, against Eagle Star. The Spencers argue strongly that this case is controlled by the Texas Supreme Court's decision in *Vail v. Texas Farm Bureau Mutual Insurance Co,* 754 S.W.2d 129 (Tex.1988). A thorough review of what *Vail* does—and does not—stand for is in order. As here, the Vails sued their fire insurer for unfair claims settlement practices, claiming violations of section 17.50(a)(4) of the DTPA, article 21.21 of the Insurance Code, and rules and regulations issued by the State Board of Insurance. The jury found that the insurer "intentionally failed to exercise good faith in the processing of the Vails' claim." 754 S.W.2d at 131. On the basis of that finding, the trial court awarded the Vails three times the policy limits. Reversing the portion of the trial court's judgment that trebled the actual damages, the court of appeals held that the DTPA and the Insurance Code did not create a private cause of action for unfair claims settlement

practices, and that the Vails were limited to a breach-of-contract claim. *Texas Farm Bureau Mut. Ins. Co. v. Vail,* 695 S.W.2d 692 (Tex.App.1985), rev'd, 754 S.W.2d 129 (Tex.1988). The Supreme Court reinstated the award of treble damages, holding that a cause of action for unfair claims settlement practices was supportable under both article 21.21 of the Insurance Code and section 17.50(a)(4) of the DTPA. *Vail,* 754 S.W.2d 129.

Article 21.21, section 16(a) of the Insurance Code provides as follows:

Any person who has sustained actual damages as a result of another's engaging in an act or practice declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices.

Tex.Ins.Code Ann. art. 21.21, § 16(a) (Supp. 1989). The Supreme Court discerned in section 16(a) three categories of behavior that would result in liability to an insurer: (1) the practices declared to be unfair in section 4 of article 21.21; (2) conduct defined in Board rules or regulations as "unfair or deceptive acts or practices in the business of insurance"; (3) any practice defined by section 17.46 of the DTPA as an unlawful deceptive trade practice. 754 S.W.2d at 132–33.

The first category, concerning practices declared in article 21.21, section 4 to be unfair, relates primarily to unfair competition between insurance companies and was not addressed.

The second category was conduct defined in State Board of Insurance rules or regulations as unfair or deceptive acts or practices in the business of insurance. With respect to that category, the court held that Board Order 18663 [1] permits recovery

---

1. Section 4 of Board Order 18663, later amend-   ed by Board Order 41060 and now codified in

from an insurer for damages resulting from "either (1) a practice that is unfair or deceptive *as defined* by the Insurance Code or by other rules or regulations promulgated by the State Board of Insurance; or (2) a practice *determined* pursuant to law to be an unfair or deceptive practice in the insurance business." 754 S.W.2d at 133 (emphasis in original). Regarding practices "defined" as unfair or deceptive, the court held that the acts listed in section 2 of the Unfair Claim Settlement Practices Act, Tex.Ins.Code Ann. art. 21.21–2 (1981)[2], were incorporated into Board Order 18663, notwithstanding that article 21.-21–2 did not, itself, confer a private cause of action and commission of the listed acts with "frequency" was a prerequisite to the issuance of cease and desist orders by the Board. 754 S.W.2d at 133–35. Hence, the court recognized one cause of action "by incorporating article 21.21, § 16 of the Insurance Code, section 4(a) of Board Order 18663, and the definition of an unfair claims settlement practice in article 21.21–2, § 2(d) of the Insurance Code." 754 S.W.2d at 136.

Regarding practices "determined pursuant to law" to be unfair or deceptive, the

court held that it was empowered to make such a determination, and that its holdings in *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165 (Tex. 1987), and *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988), were "determinations pursuant to law that an insurer's lack of good faith in processing a claim is an unfair or deceptive act." 754 S.W.2d at 135. Hence, a second cause of action was recognized "by incorporating article 21.21, § 16 of the Insurance Code, section 4(b) of Board Order 18663, and the determinations made by this court in *Arnold* and *Aranda*." 754 S.W.2d at 136.

The third category of behavior identified in *Vail* as resulting in liability under article 21.21, section 16 of the Insurance Code was any practice defined as an unlawful trade practice by section 17.46 of the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (1987). The court held that this would include not merely the laundry-list items from section 17.-46(b), but also *unlisted* practices pursuant to section 17.46(a). 754 S.W.2d at 135; *see Spradling v. Williams*, 566 S.W.2d 561, 564 (Tex.1978). Restating the rule from *Spradling* that an allegation of an unlisted

---

28 Tex.Admin.Code § 21.3 (West July 21, 1988), provides as follows:

(a) ... No person shall engage in this state in any trade practice that is a misrepresentation of an insurance policy, that is an unfair method of competition, or that is an unfair or deceptive act or practice as defined by the provisions of the Insurance Code or as defined by these sections and other rules and regulations of the State Board of Insurance authorized by the Code.

(b) Irrespective of the fact that the improper trade practice is not defined in any other section of these rules and regulations, no person shall engage in this state in any trade practice which is determined pursuant by law to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

**2.** Section 2 of article 21.21–2 provides as follows:

Any of the following acts by an insurer, if committed without cause and performed with such frequency as determined by the State Board of Insurance as provided for in this Act, shall constitute unfair claim settlement practices:

(a) Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;

(b) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;

(c) Failing to adopt and implement reasonable standards for prompt investigation of claims arising under its policies;

(d) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear;

(e) Compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;

(f) Failure of any insurer to maintain a complete record of all the complaints which it has received during the preceding three years or since the date of its last examination by the commissioner of insurance, whichever time is shorter....

(g) Committing other actions which the State Board of Insurance has defined, by regulations adopted pursuant to the rule-making authority granted it by this Act, as unfair claim settlement practices.

practice requires a separate finding that the act or practice was deceptive, the court in *Vail* held that the jury "made the requisite determination that [the insurer] had engaged in a deceptive act or practice when it found that [the insurer] had failed to exercise good faith in the handling of the Vails' claim." 754 S.W.2d at 135. Hence, the court recognized a third cause of action "by incorporating article 21.21, § 16 of the Insurance Code and section 17.46 of the DTPA." 754 S.W.2d at 136.

The Supreme Court in *Vail* also held that the Vails had pleaded and proved a cause of action under section 17.50(a)(4) of the DTPA, which provides as follows:

> A consumer may maintain an action where any of the following constitute a producing cause of actual damages:
>
> *   *   *   *   *   *
>
> (4) the use or employment by any person of an act or practice in violation of Article 21.21, Texas Insurance Code, as amended, or rules or regulations issued by the State Board of Insurance under Article 21.21, Texas Insurance Code, as amended.

Tex.Bus. & Com.Code Ann. § 17.50(a)(4) (1987). The court did not separately analyze the Vails' causes of action under section 17.50(a)(4) of the DTPA, presumably because any such discussion would have been largely repetitive of what had already been said in connection with article 21.21, section 16 of the Insurance Code.

### QUESTION 1(A)

In *Vail*, the Supreme Court was concerned with whether the Vails had pleaded and proved a cause of action. In the present case, on the other hand, the primary dispute does not revolve around pleadings and proof. Rather, the dispositive issue is whether the jury's affirmative answer to Question 1(A) is sufficient to support a judgment.

The Spencers assert that the substance of the jury's finding in response to Question 1(A) "is identical to the substance of the jury finding in *Vail*." We disagree. In *Vail*, Special Issue No. 4 asked the following:

> Do you find from a preponderance of the evidence that the defendant intentionally failed to exercise good faith in the investigation, processing, and denial of the claim made the basis of this lawsuit?
> Answer: "We do."

754 S.W.2d at 135. The failure to exercise good faith in the handling of a claim had already been determined in *Arnold* and *Aranda* to be an unfair or deceptive act. Accordingly, the jury's affirmative answer supported liability under either section 4(b) of Board Order 18663 (as a practice determined by law to be unfair or deceptive) or under section 17.46(a) of the DTPA (as an unlisted deceptive trade practice).

In the present case, Question 1(A) does not ask whether Eagle Star failed to exercise good faith. Instead, it asked whether the jury found Eagle Star's handling of the Spencers' claim to be "an unfair practice in the business of insurance." The accompanying instruction defined "unfair practice" to mean "any act or series of acts which is arbitrary, without justification, or takes advantage of a person to the extent that an unjust or inequitable result is obtained." The use of the disjunctive "or" in the definition allowed the jury to answer Question 1(A) "yes" if they believed that Eagle Star's handling of the Spencers' claim was "arbitrary" *or* if they believed it was "without justification" *or* if they believed it "[took] advantage of a person to the extent that an unjust or inequitable result [was] obtained."

The Spencers argue that the affirmative finding to Question 1(A) supports liability under at least three causes of action recognized in *Vail*: (1) "unfair settlement practices under article 21.21–2"; (2) "breach of the duty of good faith and fair dealing as an unlisted unfair practice under Board Order 41060 (formerly Board Order 18663)"; and (3) "failure to settle as an unlisted deceptive trade practice." We will examine each of these theories.

■ First, the Spencers argue that the jury's answer to Question 1(A) supports liability as a finding of unfair settlement practices under article 21.21–2. As dis-

cussed previously, the Supreme Court in *Vail* held the list of practices contained in article 21.21–2 to be practices "defined" as unfair or deceptive and, therefore, to fall within the reach of section 4(a) of Board Order 18663. However, none of the practices listed in article 21.21–2 is even remotely suggestive of the acts included in Question 1(A): arbitrary, without justification, or takes advantage of a person to the extent that an unjust or inequitable result is obtained. By itself, article 21.21–2 does not confer a private cause of action; nor were any of the individual practices listed in article 21.21–2 included in Question 1(A). Accordingly, an affirmative answer to Question 1(A) does not support a cause of action through or under article 21.21–2.

■ Second, the Spencers assert that the answer to Question 1(A) establishes liability as a breach of the duty of good faith and fair dealing as an unlisted unfair practice under Board Order 18663. As discussed above, a practice which has been "determined pursuant to law" to be an unfair or deceptive practice in the business of insurance is actionable under section 16 of article 21.21 of the Insurance Code. *Vail,* 754 S.W.2d at 135; *Aetna Casualty & Sur. Co. v. Marshall,* 724 S.W.2d 770, 772 (Tex. 1987). It is true that *Arnold,* 725 S.W.2d 165, and *Aranda,* 748 S.W.2d 210, recognized a common-law duty of good faith and fair dealing owed by every insurer to its insureds. Nonetheless, we cannot conclude that a finding that a practice is "arbitrary" or "without justification" or that it "takes advantage of a person to the extent that an unjust or inequitable result is obtained" necessarily carries with it a finding of the breach of the duty of good faith. For example, the definitions of both "unjust" and "inequitable" relate back to the idea of "unfair." The Random House Dictionary of the English Language (Unabr. 2d ed. 1987). To a limited extent, therefore, Question 1(A) asked if Eagle Star committed an "unfair practice" and then defined an unfair practice as one that produced an unfair result. An open-ended question which merely asks if the insurer has acted unfairly effectively allows the jury to decide a question of law rather than fact. *See Chitsey v. National*

*Lloyds Ins. Co.,* 738 S.W.2d 641, 643 (Tex. 1987). The proper practice is to do what the plaintiffs in *Vail* did: obtain a specific finding that the insurer "intentionally failed to exercise good faith" in the handling of the claim. Since Question 1(A) does not constitute such a finding, it does not support a cause of action under Board Order 18663 as a breach of the duty of good faith.

■ Finally, the Spencers argue that the answer to Question 1(A) supports liability as an unlisted deceptive trade practice under section 17.46(a) of the DTPA. As discussed above, a practice not listed in section 17.46(b) of the DTPA may still be actionable as an "unlisted practice" under section 17.46(a). However, when an unlisted practice is alleged, "the plaintiff must obtain a finding that the act or practice occurred *and that it was deceptive."* *Vail,* 754 S.W.2d at 135 (emphasis added); *see also Spradling,* 566 S.W.2d at 564. No such finding was obtained here. Just as the affirmative answer to Question 1(A) does not constitute a finding of a breach of the duty of good faith, likewise it does not constitute a finding that Eagle Star committed acts that were false, misleading, or deceptive. A finding to that effect is required before liability may be imposed for the violation of an unlisted deceptive trade practice. *Vail,* 754 S.W.2d at 135; *Spradling,* 566 S.W.2d at 563; *see also* Chumlea, *Statutory Claims for Unfair Insurance Settlement Practices—Vail v. Texas Farm Bureau Mutual Insurance Company,* 20 St. Mary's L.J. 571, 578 n. 36 (1989). Accordingly, Question 1(A) does not support a cause of action under section 17.46(a) of the DTPA.

### THE *STERLING* CASE

In a supplemental brief, the Spencers argue that the recent case of *Stewart Title Guaranty Co. v. Sterling,* 772 S.W.2d 242 (Tex.App.1989, writ pending), supports the submission of Question 1(A). In *Sterling* special issue five read as follows:

Do you find from a preponderance of the evidence that Stewart Title Guaranty Co.

engaged in any unfair claims settlement practice with respect to Dawson Sterling?

Answer "Yes" or "No"

ANSWER: Y[es]

You are instructed that the term "unfair claims settlement practice" is defined as any one of the following acts or omissions:

(a) Misrepresenting to W. Dawson Sterling pertinent facts or policy provisions relating to coverages at issue.

(b) Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become clear.

(c) Compelling W. Dawson Sterling to institute suit to recover amounts due under his policy by offering substantially less than the amounts ultimately recovered in suit brought by him.

(d) Failing to provide promptly to W. Dawson [Sterling] a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim.

772 S.W.2d at 244–45.

The Spencers assert that the issue submitted in *Sterling* is "very similar" to Question 1(A) and supports its submission. We disagree. Although the interrogatory itself is similar, the heart of both questions is in the instructions defining the crucial terms "unfair claim settlement practice" and "unfair practice." In *Sterling* the definition encompassed four specific acts. The first three of those acts were obviously taken directly from sections 2(a), 2(d), and 2(e) of article 21.21–2 of the Insurance Code. Accordingly, they clearly fall into the category of acts described in *Vail* as having been *defined* as unfair or deceptive. To that extent, we think the issue was properly framed.[3] On the other hand, the instruction that accompanied Question 1(A) in the present case defined "unfair prac-

tice" in vague and general terms. The phrases "arbitrary," "without justification," and "takes advantage of a person to the extent that an unjust or inequitable result is obtained" do not describe acts that have been defined in Texas law as being unfair or deceptive.

Another issue submitted in *Sterling* asked merely, "Do you find from a preponderance of the evidence that Stewart Title Guaranty Co. engaged in any improper trade practice with respect to the business of insurance?" 772 S.W.2d at 246. Apparently no definition accompanied that issue. The only objection to the wording of that issue was that "the language should have specified that the inquiry was limited to improper trade practices with respect to the business of *title* insurance." 772 S.W.2d at 246 (emphasis in original). Therefore, the court of appeals in *Sterling* did not give express approval to the overall wording of the issue. We believe such an issue, as worded, would be improper without an appropriate instruction.

PRESERVATION OF ERROR

■ Finally, the Spencers argue that the objections made by Eagle Star to the wording of Question 1(A) were too general to preserve the error asserted by Eagle Star. If this were an appeal by Eagle Star from a judgment in favor of the Spencers, such an argument might have merit. However, this is not such an appeal. The trial court granted Eagle Star's post-verdict motion for judgment, and it is the Spencers who are appealing. Accordingly, the sufficiency of Eagle Star's objections to the charge is not in issue. Since, as we have held, an affirmative answer to Question 1(A) does not support an award in favor of the Spencers under Texas law, the question was immaterial. The jury's answer to an immaterial issue may properly be disregarded by the trial court, even on its own motion.

---

3. The fourth act contained in the *Sterling* instruction came *not* from article 21.21–2, but from section .003(9) of Board Order 41454, 28 TAC § 21.203(9) (West 1988). The Supreme Court in *Vail* expressly recognized, however, that Board Order 41454 could not be relied on in a situation such as this because the Order contains a prerequisite that the insurer must have engaged in the act with "such frequency as to indicate a general business practice." 754 S.W.2d at 134–35. In light of that holding, it appears that the fourth act in the instruction in *Sterling* was improperly included.

*Intertex, Inc. v. Cowden,* 728 S.W.2d 813, 818–19 (Tex.App.1986, no writ); *Brown v. Armstrong,* 713 S.W.2d 725, 728–29 (Tex. App.1986, writ ref'd n.r.e.); *Priem v. Shires,* 697 S.W.2d 860, 865 n. 4 (Tex.App. 1985, no writ).

### CONCLUSION

The affirmative answer to Question 1(A) does not constitute a finding that Eagle Star committed an act defined as, or determined pursuant to law to be, an unfair or deceptive practice in the business of insurance; nor does it constitute a finding of the commission of an unlisted deceptive trade practice. Accordingly, Question 1(A) does not support a cause of action under Texas law for unfair claims settlement practices. It was therefore an immaterial issue, and the trial court did not err in disregarding the jury's affirmative answer. The Spencers' points of error are overruled.

The judgment of the trial court is affirmed.