**Paul J. MARTINKA, Appellant,**

v.

**COMMONWEALTH LAND TITLE INSURANCE COMPANY and Commonwealth Land Title Company of Houston, Appellees.**

**No. 01–91–00493–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 13, 1992.

Rehearing Denied Oct. 1, 1992.

---

David L. Cook, Jr., Ronald G. Byrnes, Houston, for appellant.

Lee W. Harpold, Daryl W. Bailey, Houston, for appellees.

Before PRICE, DUGGAN and DUNN, JJ.

## OPINION

PRICE [1], Justice.

This is an appeal of a summary judgment in favor of a title insurance company against one of its policy holders.

On March 31, 1982, Richard L. Minns, trustee, conveyed a condominium located at 312 Linchfield Lane, Houston, Texas, to appellant, Paul J. Martinka. As part of the transaction, appellant purchased title insurance from Commonwealth Land Title Company of Houston, agent for Commonwealth Land Title Insurance Company (collectively appellee). Appellant took possession of the property and used it as his primary residence.

In early 1987, appellant sought to refinance his mortgage at a lower interest rate and contacted Sterling Mortgage Company. After an initial investigation, Sterling informed appellant that a lis pendens had

---

1. The Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

been filed against the property on March 31, 1982, the same day appellant purchased the property from Minns. Upon further investigation, appellant's attorney, Ronald G. Byrnes, discovered that Barbara Piotrowski had filed actions against Minns for personal injuries and divorce, and had: (1) alleged the property was her residence, (2) sought exclusive possession of the property, and (3) filed a notice of lis pendens.

On April 7, 1987, Byrnes sent a letter to W.J. "Bill" Bartram, senior vice-president and counsel for appellee requesting confirmation in writing that appellee would defend appellant's title against Piotrowski's claim and, if Piotrowski's claim was adjudicated in her favor, pay appellant for any loss up to the policy limit. Bartram had already received, on or about March 26, 1987, a copy of appellant's deed and title policy, a copy of the notice of lis pendens filed by Piotrowski, a request for a letter of indemnity, and notice that Sterling Mortgage Corporation anticipated closing a $70,-000 loan with appellant.

On May 21, 1987, Byrnes sent Bartram a second letter informing him that the cloud on the title to the property inhibited appellant from either selling the property or refinancing the mortgage. Byrnes suggested that appellee clear the title. Failing that, Byrnes suggested appellee either pay the face amount of the policy, or the difference between the face of the policy and the existing mortgage, and take an assignment of the property.

In an undated letter addressed to Brynes, Bartram acknowledged Piotrowski's lis pendens on the property. Bartram closed by saying, "Upon receipt of the information you mentioned to me on the phone yesterday, I will forward papers to our claims office in Dallas and ask that immediate action be taken." On July 27, 1987, Byrnes sent Bartram a copy of the proposed "Intervenor's Original Petition" that appellant intended to file in the Piotrowski–Minns divorce action. On August 3, 1987, appellee informed Byrnes by letter that Craig DeWall would be handling appellant's claim and all pertinent information should be forwarded to him.

On August 25, 1987, appellant intervened in the Piotrowski–Minns action, naming appellee and his mortgagee as other defendants. In response, appellee filed a plea in abatement requesting that it be allowed to exercise its contractual right to defend appellant's title. However, these actions were held in abeyance pursuant to a December 17, 1986, order abating the Piotrowski–Minns divorce and personal injury actions. *Minns v. Minns*, 762 S.W.2d 675, 676 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

On September 25, 1987, appellee sent Byrnes a letter asking for a nonsuit in the intervention action and permission to prosecute the intervention on appellant's behalf. Appellee offered to reimburse appellant for the legal fees incurred in filing the intervention and explained it wished to conclude the matter in a summary judgment. In its brief, appellee claims appellant refused this offer to defend his title.

The trial court lifted the order of abatement in the Piotrowski–Minns actions on September 18, 1989. On December 5, 1989, appellees obtained a partial summary judgment denying Piotrowski her claim to the property. Thereafter, appellant's action was transferred to the 127th district court, and all defendants subsequently obtained summary judgments.

In three points of error, appellant contends the trial court erred in granting appellee's motion for summary judgment because: (1) appellee owed a duty of good faith and fair dealing, (2) there were genuine issues of fact as to one or more elements of appellant's causes of action to be determined by the trier of fact, and (3) appellee owed a duty to appellant to inform him of Piotrowski's claims and the lis pendens on the property before issuing its title policy.

In point of error one, appellant argues appellee was subject to the duty of good faith and fair dealing. Appellant argues this Court should extend the duty of good faith and fair dealing to include "mortgage title contracts and that [a]ppellee's failure and refusal to respond to adverse claims against [a]ppellant's property, ... consti-

tutes a breach of that duty to promptly investigate and respond to those claims and renders [a]ppellee liable from any damage incurred by [a]ppellant." However, appellant's factual allegations simply do not support a bad faith claim.

A cause of action for breach of duty of good faith and fair dealing lies when it is alleged there is no reasonable basis for denial of a claim, delay in payment, or a failure on the part of the insurer to determine whether there is any reasonable basis for denial or delay." *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). Thus, a bad faith claim may arise in two instances: (1) when an insurer denies an insured's claim, or (2) when an insurer is obligated to pay proceeds on an insured's claim and it is dilatory in paying. Neither instance is involved in this case.

Under the title insurance policy, appellee was obligated to defend appellant's title against adverse claims, and in the event a court of last resort adjudicated such a claim meritorious, to indemnify appellant for his property loss. Precise language to this effect allows appellee the opportunity to defend a suit brought by an adverse claimant before having to pay the insured. *Southern Title Guarantee Co. v. Prendergast*, 494 S.W.2d 154, 156 (Tex. 1973). In this case, appellee successfully defended appellant's title against Piotrowski's adverse claim, thus by the terms of the policy, appellee was never obligated to pay any proceeds.

Point of error one is overruled.

Point of error two alleges genuine fact issues exist on one or more of appellant's causes of action. Appellant contends that for 171 days, from April 7, 1987, through September 25, 1987, appellee refused to respond to his request to either defend appellant's title or pay under the policy. Because appellee failed to comply with his request, appellant claims he was unable to refinance the mortgage or sell the property, and inevitably lost the property to the

mortgagee. Because of these acts and omissions, appellant argues appellee violated the Deceptive Trade Practices Act (DTPA),[2] the Insurance Code,[3] and duty of good faith and fair dealing. Having already disposed of appellant's bad faith action, we will confine our inquiry to the remaining causes of action.

As indicated above, appellee's policy guaranteed appellant "good and indefeasible title to the estate or interest in the land described or referred to in [the] policy." Failing that, appellee agreed, with certain exceptions not applicable here, to defend "the insured in every action or proceeding on any claim against, or right to the estate or interest in the land, or any part thereof, adverse to the title or interest in the land." The policy further stated appellant "shall not be liable until such adverse interest, claim, or right shall have been held valid by a court of last resort to which each litigant may apply...."

An insured is entitled to recover under the DTPA and the Insurance Code when an insurer wrongfully refuses to pay a valid claim. *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988); Tex.Ins.Code Ann. arts. 21.21, § 16; 21.21–2, § 2(d) (Vernon 1981). Under the Insurance Code, "unfair settlement claim practice" is defined as "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear." Tex.Ins.Code Ann. art. 21.21–2, § 2(d) (Vernon 1981).

Appellant's causes of actions are predicated on appellee's alleged duty to either settle appellant's claim or to pay appellant the policy proceeds; however, the undisputed facts show appellee never incurred such a duty. First, by the terms of the insurance policy, appellee's duty to pay policy proceeds would arise only after a court of last resort found Piotrowski's adverse title claim to be valid. This never occurred. The law allows an insurer a reasonable opportunity to clear the insured title.

---

**2.** Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987).

**3.** Tex.Ins.Code Ann. art. 21.21 § 3 (Vernon 1981).

*Prendergast,* 494 S.W.2d at 158. The record reflects that appellee seized this opportunity and successfully defeated Piotrowski's claim.

■ Second, appellee's duty to settle appellant's claim would arise only after appellee's liability for the claim became "reasonably clear." *See Vail,* 754 S.W.2d at 136. The undisputed facts show appellee's liability never became "reasonably clear." Appellee successfully defeated Piotrowski's claim within three months after the abatement was lifted. Based on these facts, appellee's duty to settle appellant's claim never arose. *See Prendergast,* 494 S.W.2d at 158.

■ Lastly, under the contract, the only other duty owed by appellee was to defend appellant's title. Again, the facts show appellee fulfilled this duty as soon as it could. Because the Piotrowski–Minns divorce action was abated, appellee was judicially prevented from defending appellant's title until the trial court lifted its order on September 18, 1989. *See Lumbermens Mut. Casualty Co. v. Garza,* 777 S.W.2d 198, 199 (Tex.App.—Corpus Christi 1989, no writ) (abatement not only precludes the trial court from going forward on a case, it prohibits the parties from proceeding in any manner until the case has been ordered reinstated). Even if appellee had immediately intervened in the divorce action on April 7, 1987, when appellant first demanded performance, appellee could not have cured the alleged title defect until the order of abatement was lifted. Just seven days after the order of abatement was lifted, appellee moved for partial summary judgment on Piotrowski's claim. The motion was granted on December 5, 1989, and extinguished any adverse claim to appellant's title. Appellee's duty to defend appellant's title under the policy was fulfilled.

Point of error two is overruled.

In point of error three, appellant asserts the trial court erred in granting summary judgment because under the DTPA appellee had a duty to disclose Piotrowski's claim against the property before issuing its insurance policy. Appellant relies on *Stewart Title Guaranty Co. v. Sterling,* 772 S.W.2d 242 (Tex.App.—Houston [14th Dist.] 1989), *rev'd on other grounds,* 822 S.W.2d 1 (Tex.1991).

■ Appellant's understanding of the law governing the title insurance business is misguided. Title insurance is a contract of indemnity. *Prendergast,* 494 S.W.2d at 158; *Tamburine v. Center Sav. Ass'n,* 583 S.W.2d 942, 947 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). The relationship between the parties to the contract is basically limited to that of indemnitor and indemnitee. *Houston Title Co. v. Ojeda De Toca,* 733 S.W.2d 325, 327 (Tex.App.—Houston [14th Dist.] 1987), *rev'd on other grounds,* 748 S.W.2d 449 (Tex.1988), *aff'd as modified,* 761 S.W.2d 467 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Tamburine,* 583 S.W.2d at 947.

A title insurance company is not a title abstractor and owes no duty to examine title. *See Tamburine,* 583 S.W.2d at 947. Further, the only duty a title insurance company has to its insured is to indemnify him against loss suffered by defects in title; the title insurance company owes no duty to point out any outstanding encumbrances. *Ojeda De Toca,* 733 S.W.2d at 327, citing *Wolff v. Commercial Standard Ins. Co.,* 345 S.W.2d 565, 569 (Tex.Civ. App.—Houston 1961, writ ref'd n.r.e.); *Tamburine,* 583 S.W.2d at 947. In other words, the title insurance company is not employed to examine title, rather it is employed only to guarantee the status of title and to insure against existing defects. *Ojeda De Toca,* 733 S.W.2d at 327. As the court in *Tamburine* correctly stated:

[The title insurance] company, before issuing a policy of title insurance, must necessarily take steps to inform itself of the status of the title to be insured. In the search for the information upon which must depend the decision to either issue or decline to commit itself to issue a policy, the insurance company obviously investigates the title for its own use and benefit to determine whether it will undertake the risk. The title information on which the company bases its decision relates to the condition of the title held

by the grantor and is not made for the prospective grantee or lienholder to whom the policy will finally issue. *Tamburine,* 583 S.W.2d at 948–49.

The reasoning employed in the above decisions is equally applicable in cases alleging DTPA liability due to nondisclosure. Article 21.21, section 16 of the Insurance Code makes actionable any unfair or deceptive act or practice with respect to the business of insurance and encompasses violations of section 17.46 of the DTPA. *Vail,* 754 S.W.2d at 135; TEX.INS.CODE ANN. art. 21.21, § 16 (Vernon 1981). The DTPA makes actionable a party's failure to disclose information known at the time of the transaction, if the failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered had the information been disclosed. TEX.BUS. & COM.CODE ANN. § 17.46(b)(23) (Vernon 1987).

In order to establish liability under this section of the DTPA, the nondisclosing party must first fail to disclose information about the goods or services to be rendered. The undisclosed information must concern the goods or services made the subject of the transaction.

In this instance, title defense and indemnification were the only services appellee was to render appellant. Appellee knew about Piotrowski's claims, but this information did not affect the contractual duty to defend or indemnify appellant for any loss he might suffer as a result of an existing title defect. Even assuming that Piotrowski's claims constituted a title defect, appellee's promised services would not be affected. The information was relevant to appellee's determination of whether it would bear the risk of defending appellant's title and indemnifying him for any loss he might suffer due to his loss of property, and had no relation to appellant's decision to purchase the policy. Because the information had no relation to the transaction, the purchase of title insurance, appellee had no duty to disclose its information to appellant.

■ Further even if the undisclosed information did concern the services appellee was to render, a duty to disclose does not arise unless the undisclosed information was determinative of appellant's decision to enter the transaction. In this regard, appellant mistakenly relates appellee's alleged duty to disclose with appellant's purchase of the underlying property. Here, the relevant transaction is appellant's purchase of appellee's title insurance policy; not appellant's purchase of the underlying property. The purchase of title insurance did not depend on whether appellant was aware of Piotrowski's claims; rather, appellant's purchase of the policy was dependent upon the title insurance company's willingness to defend appellant's title and indemnify him for any future property loss he might sustain as a result of a defect in title. Because appellant's decision to purchase title insurance did not depend on appellee's disclosure of Piotrowski's claim, appellee had no duty to disclose such information to appellant. Therefore, under the DTPA, appellant's complaint is without merit.

Appellant's reliance on *Sterling* is misplaced. Sterling purchased a large tract of land which he intended to develop into a residential subdivision. As part of that purchase, he sought to acquire title to three water district lots that were critical to the development. Stewart Title Company was to supply title insurance to Sterling for all of the property, including the three essential water district lots. Prior to closing, Sterling became aware that the water district lots were not owned by the person with whom he had been negotiating. Stewart's policy commitment would not cover the water district lots under this scenario. Although Stewart's files showed the lots were not owned by the "seller," Stewart told Sterling "the lots would be included in the deal." At closing, Stewart again assured Sterling he would receive "good and indefeasible title to all property, including the critical water lots." Based on these representations, Sterling closed on the property and purchased title insurance from Stewart. As part of the closing, Sterling was required to sign a "waiver of inspection," that stated Stewart's policy would except from coverage the rights of

parties in possession, "the existence of which does not appear in the record." *Sterling,* 772 S.W.2d at 243.

When Sterling learned his title to the three water district lots was defective, he made a claim on his title policy. Stewart denied Sterling's claim and sought a declaratory judgment against him. Sterling then filed suit against Stewart, and other persons involved in the sale. The cases were consolidated and proceeded to trial.

The jury found Stewart had knowingly engaged in an improper trade practice that was a producing cause of Sterling's damage and awarded damages. On appeal, Stewart argued the trial court improperly overruled its objection to the special issue on whether Stewart engaged in improper trade practice. Stewart asserted the inquiry should have been limited to improper trade practices in the title insurance business. Stewart also cited a number of cases for the proposition that it had no duty to disclose to Sterling the results of its title search.

The court of appeals held the objection was properly overruled: "The jury obviously understood Stewart's business was providing title insurance and that the salient question before them involved the particular title policy issued to Sterling." *Sterling,* 772 S.W.2d at 246. The court distinguished the cases cited by Stewart:

> The authorities cited involve negligence claims, and clearly state Stewart had no duty to *discover* and disclose the title defects, only to act as indemnitor against failure of title. However, those holdings cannot be stretched to support Stewart's proposition it cannot be liable under article 21.21, section 16, for misrepresentation and nondisclosure of material facts. [citation omitted] We find that Stewart had a duty to disclose its knowledge of prior recorded ownership of the three lots.

*Id.* at 246–47.

This holding cannot be severed from its factual basis. Stewart had affirmatively represented to Sterling that he would receive "good and indefeasible title" to three critical lots and that the lots would be "included in the deal." *Sterling,* 772

S.W.2d at 243. By making this affirmative representation, Stewart assumed the duty to disclose the fact there were three recorded general warranty deeds reflecting ownership in someone other than the seller.

Stewart also represented to Sterling it would insure the three lots against title defects. Certainly, if Stewart had disclosed that because the seller was not the rightful owner, the three lots would not be covered under his title policy, Sterling would not have bought the insurance. The information Stewart possessed particularly affected the services it was to render under the policy—title defense and indemnification. As this information was determinative of whether Sterling purchased the policy, Stewart had a duty under the DTPA to disclose its information.

The *Sterling* case is distinguishable from the instant case in two material ways. First, appellee made no affirmative representation to appellant about the validity of his title in the property. Second, appellee did not possess information that would have excepted the property from coverage under its policy. Therefore, unlike in *Sterling,* appellee did not incur a duty under the DTPA to disclose its knowledge of Piotrowski's claims.

Appellant's third point is overruled.

The judgment is affirmed.