Opinion issued June 13, 2002












 





In The

Court of Appeals

For The

First District of Texas






NO. 01-00-01417-CV

____________


HISPANIC HOUSING & EDUCATION CORPORATION, Appellant


V.


CHICAGO TITLE INSURANCE COMPANY, Appellee






On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 2000-09096






O P I N I O N

 Appellant, Hispanic Housing & Education Corporation ("HHEC"), challenges
the trial court's rendition of summary judgment in favor of appellee, Chicago Title
Insurance Company ("Chicago"). In five points of error, HHEC argues the trial court
erred in granting summary judgment to Chicago and in ruling Chicago did not breach
a contract with HHEC, did not make any negligent or fraudulent misrepresentations
to HHEC, and did not breach a duty of good faith and fair dealing by refusing to settle
with HHEC. We affirm.

Factual and Procedural Background


 On December 9, 1997, HHEC executed an earnest money contract to purchase
an apartment complex from Appletree Apartments, L.L.C. ("Appletree") (1) for
approximately $6 million. HHEC intended to obtain financing for its purchase of the
apartments through the federal Department of Housing and Urban Development
(HUD). (2)

 The earnest money contract provided for a 45-day inspection period, with
closing to take place on or before 60 days after completion of the inspection period. 
The contract designated Chicago as the title company and required HHEC to deposit
$25,000 as earnest money with Chicago. Under the provisions of the contract, and
upon receipt of the earnest money, Chicago was to provide HHEC with a commitment
for title insurance and "legible copies (to the extent reasonably available) of all
instruments mentioned therein as exceptions to good and indefeasible title." The
contract also provided that, at closing, HHEC would bear the cost of the premium for
a title insurance policy to be issued by Chicago.

 HHEC deposited its earnest money with Chicago and, on December 18, 1997,
received a commitment for title insurance from Chicago. Schedule C of the title
insurance commitment listed one outstanding lien against the property, a mechanic's
and materialmen's lien totaling $649.78.

 In 1998, HHEC negotiated with Appletree for two extensions of the closing
date for the purchase of the property, ultimately agreeing to a closing date of August
28, 1998. In exchange for these extensions, HHEC deposited an additional $30,000
in earnest money.

 On August 18, 1998, Chicago provided HHEC with a second commitment for
title insurance. That commitment listed an additional exception in Schedule C, "[a]n
Abstract of Judgment by Harold Fogey against Rina, Inc. d/b/a Appletree Apartments
in the amount of $650,000.00 filed for record on December 13, 1993 . . . ." The
parties do not dispute that this judgment was settled in March of 1995, although no
release of judgment was filed at that time.

 HHEC was not able to purchase the apartment complex on August 28, 1998
because its HUD funding had not been approved. Appletree subsequently demanded
a $600,000 increase in the purchase price of the property in exchange for an
additional extension. HHEC never purchased the apartment complex.

 In February of 2000, HHEC brought this lawsuit against Chicago. In its first
amended petition, HHEC asserted causes of action against Chicago for negligent and
fraudulent misrepresentation, breach of contract, and breach of the duty of good faith
and fair dealing regarding Chicago's original commitment for title insurance. 
Chicago filed a motion for summary judgment on all claims raised by HHEC. HHEC
subsequently filed a second amended petition, adding claims based on Chicago's
second title insurance commitment. HHEC's second amended petition reads, in part,
as follows:

 In its Original Commitment, [Chicago] falsely represented to [HHEC]
that the title to the Property was free of liens, when the Lien was of
record. . . . [HHEC] obviously would not have placed its earnest money
at risk, paid in additional non-refundable earnest money, and incurred
expenses in its loan application and due diligence processes, had it not
had the assurance from [Chicago] in the Original Commitment that the
Property was free of liens. In making the representation in the Original
Commitment that the Property was free of liens, [Chicago] failed to
exercise reasonable care and was negligent in failing to discover the
Lien, which was recorded. [Chicago]'s negligent conduct proximately
caused [HHEC]'s Damages. . . . [Chicago] later falsely represented to
[HHEC] in the Revised Commitment that the Property was subject to the
Lien when in fact the Lien had been paid off years before, and was
invalid. . . . The untrue representations in both the Original Commitment
and in the Revised Commitment were either made knowingly,
intentionally, and falsely, or made recklessly as they were positive
assertions without any knowledge of their truth or falsity. . . . These
false representations by [Chicago] constitute fraudulent and/or negligent
misrepresentation of title, for which [HHEC] sues.


In response, Chicago filed a second motion for summary judgment, addressing
HHEC's claims regarding the second title insurance commitment. 

 The trial court granted both motions for summary judgment, disposing of all
of HHEC's claims.

Motion for Summary Judgment


 In its first point of error, HHEC argues the trial court erred in granting
summary judgment in favor of Chicago on all of HHEC's claims.

 A party moving for summary judgment under Rule 166a(c) has the burden of
proving there is no genuine issue of material fact and the movant is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Property Mgmt.,
690 S.W.2d 546, 548 (Tex. 1985); Farah v. Mafrige & Kormanik, 927 S.W.2d 663,
670 (Tex. App.--Houston [1st Dist.] 1996, no writ). When deciding whether there
is a disputed material fact issue precluding summary judgment, evidence favorable
to the nonmovant will be taken as true. Nixon, 690 S.W.2d. at 548-49. Every
reasonable inference must be indulged in favor of the nonmovant and any doubts
resolved in its favor. Id. When a defendant moves for summary judgment, it must
either: (1) disprove at least one element of each of the plaintiff's causes of action; or
(2) plead and conclusively establish each essential element of its affirmative defenses,
thereby rebutting the plaintiff's causes of action. Cathey v. Booth, 900 S.W.2d 339,
341 (Tex. 1995); Farah, 927 S.W.2d at 670. We apply this standard in reviewing the
trial court's rendition of summary judgment in favor of Chicago.

 HHEC brought causes of action against Chicago for breach of contract, breach
of the duty of good faith and fair dealing, and negligent and fraudulent
misrepresentation. In its first point of error, HHEC argues the trial court erred in
rendering summary judgment in favor of Chicago. However, the trial court's
summary judgment orders do not specify the grounds upon which the trial court based
its decision. Thus, we must review the summary judgment record to determine
whether Chicago disproved at least one element of each of HHEC's causes of action.

Negligent and/or Fraudulent Misrepresentation

 In HHEC's third point of error, it argues Chicago's failure to disclose the 1993
judgment against Appletree in the original title insurance commitment constituted an
affirmative misrepresentation of the title to the property. In its fourth point of error,
HHEC argues Chicago's inclusion of the same 1993 judgment as an exception in its
revised title insurance commitment was also an affirmative misrepresentation of the
title to the property, because that judgment had been paid in full or settled. HHEC
contends it relied on Chicago's statements in the title insurance commitments as
representations about the status of the title of the property, and that such statements
were negligent or fraudulent misrepresentations.

 The business of title insurance is regulated under the Title Insurance Act. Tex.
Ins. Code Ann. art. 9.01(B) (Vernon Supp. 2002). A title insurance company may
not use any form, or charge any premium, without each having been approved by the
Texas Commissioner of Insurance. Tex. Ins. Code Ann. art. 9.07 (Vernon Supp.
2002). With regard to title insurance commitments, article 9.07B of the Title
Insurance Act provides, in part, as follows:

 (a) An abstract of title prepared from an abstract plant for a chain of
title of real property described in the abstract of title is not title
insurance, a commitment for title insurance, or any other title
insurance form.


 . . . .


 (c) A "commitment for title insurance" means a title insurance form
that offers to issue a title policy subject to stated exceptions,
requirements, and terms. . . . The commitment, binder, title policy,
or other insurance form is not an abstract of title. The
commitment or binder constitutes a statement of the terms and
conditions on which the title insurance company is willing to
issue its policy. The title insurance policy or other insurance form
constitutes a statement of the terms and conditions of the
indemnity under the title insurance policy or other form.


Tex. Ins. Code Ann. art. 9.07B(a), (c) (Vernon Supp. 2002) (emphasis added).

 Our courts have considered title insurance policies as contracts of indemnity. 
Chicago Title Ins. Co. v. McDaniel, 875 S.W.2d 310, 311 (Tex. 1994). The only duty
imposed on a title insurer is the duty to indemnify its insured against losses caused
by defects in title; a title insurer owes no duty to point out any outstanding
encumbrances. Martinka v. Commonwealth Land Title Ins. Co., 836 S.W.2d 773, 777
(Tex. App.--Houston [1st Dist.] 1992, writ denied).

 However, a title insurer may be held liable for an affirmative representation
regarding title that is a producing cause of damages to an insured. In First Title Co.
v. Garrett, 860 S.W.2d 74, 77 (Tex. 1993), the court held an insurer's affirmative
representation in its title insurance commitment that there were no restrictive
covenants of record was sufficient to subject the insurer to liability under the DTPA. (3) 
We must therefore, review the summary judgment record to determine whether
Chicago proved, as a matter of law, it made no affirmative representations about the
status of title of the property at issue. (4)

 Schedule C of the original title insurance commitment reads, in part, as
follows:

 Your Policy will not cover loss, costs, attorney's fees, and expenses
resulting from the following requirements . . . unless you dispose of
these matters to our satisfaction, before the date the Policy is issued:


 . . . .


 6. Mechanic's and Materialmen's Lien Affidavit . . . in the amount
of $649.78, filed for record on July 23, 1997 . . . .


The original title insurance commitment lists no other liens or judgments against the
property. Schedule C contains no affirmative representation that the mechanic's lien
listed is the only encumbrance on the property. 

 The revised title insurance commitment is identical to the original, but includes
"[a]n Abstract of Judgment by Harold Fogey against Rina, Inc. d/b/a Appletree
Apartments in the amount of $650,000.00 filed for record on December 13, 1993 . .
. ." The revised commitment does not state whether the 1993 judgment was paid in
full or settled.

 Our review of the title insurance commitment forms reveals no affirmative
representations concerning the status of the title to the property at issue. Rather, the
items shown on Schedule C of the original and revised commitments are listed as
possible exceptions to coverage under the title insurance policy to be issued. Further,
a page of the commitment entitled "Texas Title Insurance Information" provides: 
"The Commitment is not an opinion or report of your title. It is a contract to issue
you a policy subject to the Commitment's terms and requirements."

 By the terms of its title insurance commitment, Chicago made no
representations it was affirmatively undertaking a duty to report all outstanding
encumbrances affecting title. As a matter of law, a title insurance commitment is not
an abstract of title. Tex. Ins. Code Ann. art. 9.07B(c). We hold the trial court did
not commit error in determining, as a matter of law, Chicago made no negligent or
fraudulent misrepresentations concerning the title to the property.

 We overrule HHEC's third and fourth points of error.

Breach of Contract

 In its second point of error, HHEC argues Chicago's failure to issue a policy
of title insurance constituted a breach of contract. However, HHEC does not dispute
that it never closed on the property involved, never paid any insurance premiums to
Chicago, and never purchased a title insurance policy from Chicago.

 The first page of the original title insurance commitment provides, "[t]his
Commitment ends ninety (90) days from the effective date, unless the Policy is issued
sooner, or failure to issue the Policy is our fault. Our liability and obligations to you
are under the express terms of this Commitment and end when this Commitment
expires." The parties do not dispute that HHEC did not purchase the property within
90 days after the title insurance commitment was issued, or by the final extended
closing date, and did not pay any premiums to Chicago or purchase a policy of title
insurance. Thus, the title insurance commitment expired without the parties having
entered into a contract of insurance. We hold the trial court did not commit error in
determining, as a matter of law, no breach of contract occurred.

 We overrule HHEC's second point of error.

Breach of Duty of Good Faith and Fair Dealing

 In its fifth point of error, HHEC argues Chicago breached its duty of good faith
and fair dealing by refusing to settle HHEC's claim against it.

 A cause of action for breach of the duty of good faith and fair dealing lies when
it is alleged there is an unreasonable delay in payment, or a failure on the part of the
insurer to determine whether there is any reasonable basis for denial or delay. Arnold
v. Nat'l County Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987); Martinka, 836
S.W.2d at 776. "Thus, a bad faith claim may arise in two instances: (1) when an
insurer denies an insured's claim, or (2) when an insurer is obligated to pay proceeds
on an insured's claim and it is dilatory in paying." Martinka, 836 S.W.2d at 776
(emphasis added).

 In the present case, HHEC did not purchase a title insurance policy from
Chicago and was not Chicago's insured; Chicago was not an insurer of HHEC and
thus incurred no duty of good faith and fair dealing.

 We overrule HHEC's fifth point of error.

 Based on the summary judgment record presented, we hold the trial court did
not err in rendering summary judgment in favor of Chicago on all of HHEC's claims. 
Accordingly, we overrule HHEC's first point of error.

Conclusion


 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Mirabal, Hedges, and Jennings.


Do not publish. Tex. R. App. P. 47.
1. Appletree is not a party to this lawsuit. HHEC sued Appletree in a separate
action to recover its earnest money.
2. HHEC applied for a total $16 million in financing from HUD to purchase and
rehabilitate the apartment complex.
3. See Tex. Bus. & Comm. Code Ann. § 17.41 (Vernon Supp. 2002). HHEC
makes no claim against Chicago under the DTPA.
4. The deposition testimony of Michael Marquez, president of HHEC, is part of
the summary judgment record. Marquez testified that no one associated with
Chicago made any oral representations to HHEC concerning the status of the
title to the property.