**HISPANIC HOUSING & EDUCATION CORPORATION, Appellant,**

**v.**

**CHICAGO TITLE INSURANCE COMPANY, Appellee.**

No. 01–00–01417–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 13, 2002.

Publication Ordered Nov. 14, 2002.

Michael Jay Kuper, Woodrow Epperson, Houston, for appellant.

Stephen C. Reid, III, Cantey & Hanger, L.L.P., Dallas, for appellee.

Panel consists of Justices MIRABAL, HEDGES, and JENNINGS.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Hispanic Housing & Education Corporation ("HHEC"), challenges the trial court's rendition of summary judgment in favor of appellee, Chicago Title Insurance Company ("Chicago"). In five points of error, HHEC argues the trial court erred in granting summary judgment to Chicago and in ruling Chicago did not breach a contract with HHEC, did not make any negligent or fraudulent misrepresentations to HHEC, and did not breach a duty of good faith and fair dealing by refusing to settle with HHEC. We affirm.

### Factual and Procedural Background

On December 9, 1997, HHEC executed an earnest money contract to purchase an apartment complex from Appletree Apartments, L.L.C. ("Appletree")[1] for approximately $6 million. HHEC intended to obtain financing for its purchase of the apartments through the federal Department of Housing and Urban Development (HUD).[2]

The earnest money contract provided for a 45–day inspection period, with closing to take place on or before 60 days after completion of the inspection period. The contract designated Chicago as the title company and required HHEC to deposit $25,000 as earnest money with Chicago. Under the provisions of the contract, and upon receipt of the earnest money, Chicago was to provide HHEC with a commitment for title insurance and "legible copies (to the extent reasonably available) of all instruments mentioned therein as exceptions to good and indefeasible title." The contract also provided that, at closing, HHEC would bear the cost of the premium for a title insurance policy to be issued by Chicago.

HHEC deposited its earnest money with Chicago and, on December 18, 1997, received a commitment for title insurance from Chicago. Schedule C of the title insurance commitment listed one outstanding lien against the property, a mechanic's and materialmen's lien totaling $649.78.

In 1998, HHEC negotiated with Appletree for two extensions of the closing date for the purchase of the property, ultimately agreeing to a closing date of August 28, 1998. In exchange for these extensions, HHEC deposited an additional $30,000 in earnest money.

On August 18, 1998, Chicago provided HHEC with a second commitment for title insurance. That commitment listed an additional exception in Schedule C, "[a]n Ab-

---

1. Appletree is not a party to this lawsuit. HHEC sued Appletree in a separate action to recover its earnest money.

2. HHEC applied for a total $16 million in financing from HUD to purchase and rehabilitate the apartment complex.

stract of Judgment by Harold Fogey against Rina, Inc. d/b/a Appletree Apartments in the amount of $650,000.00 filed for record on December 13, 1993. . . ." The parties do not dispute that this judgment was settled in March of 1995, although no release of judgment was filed at that time.

HHEC was not able to purchase the apartment complex on August 28, 1998 because its HUD funding had not been approved. Appletree subsequently demanded a $600,000 increase in the purchase price of the property in exchange for an additional extension. HHEC never purchased the apartment complex.

In February of 2000, HHEC brought this lawsuit against Chicago. In its first amended petition, HHEC asserted causes of action against Chicago for negligent and fraudulent misrepresentation, breach of contract, and breach of the duty of good faith and fair dealing regarding Chicago's original commitment for title insurance. Chicago filed a motion for summary judgment on all claims raised by HHEC. HHEC subsequently filed a second amended petition, adding claims based on Chicago's second title insurance commitment. HHEC's second amended petition reads, in part, as follows:

> In its Original Commitment, [Chicago] falsely represented to [HHEC] that the title to the Property was free of liens, when the Lien was of record. . . . [HHEC] obviously would not have placed its earnest money at risk, paid in additional non-refundable earnest money, and incurred expenses in its loan application and due diligence processes, had it not had the assurance from [Chicago] in the Original Commitment that the Property was free of liens. In making the representation in the Original Commitment that the Property was free of liens, [Chicago] failed to exercise reasonable care and was negligent in failing

to discover the Lien, which was recorded. [Chicago]'s negligent conduct proximately caused [HHEC]'s Damages. . . . [Chicago] later falsely represented to [HHEC] in the Revised Commitment that the Property was subject to the Lien when in fact the Lien had been paid off years before, and was invalid. . . . The untrue representations in both the Original Commitment and in the Revised Commitment were either made knowingly, intentionally, and falsely, or made recklessly as they were positive assertions without any knowledge of their truth or falsity. . . . These false representations by [Chicago] constitute fraudulent and/or negligent misrepresentation of title, for which [HHEC] sues.

In response, Chicago filed a second motion for summary judgment, addressing HHEC's claims regarding the second title insurance commitment.

The trial court granted both motions for summary judgment, disposing of all of HHEC's claims.

### Motion for Summary Judgment

In its first point of error, HHEC argues the trial court erred in granting summary judgment in favor of Chicago on all of HHEC's claims.

A party moving for summary judgment under Rule 166a(c) has the burden of proving there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Property Mgmt.*, 690 S.W.2d 546, 548 (Tex.1985); *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 670 (Tex.App.-Houston [1st Dist.] 1996, no writ). When deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d. at 548–49. Ev-

ery reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.* When a defendant moves for summary judgment, it must either: (1) disprove at least one element of each of the plaintiff's causes of action; or (2) plead and conclusively establish each essential element of its affirmative defenses, thereby rebutting the plaintiff's causes of action. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Farah,* 927 S.W.2d at 670. We apply this standard in reviewing the trial court's rendition of summary judgment in favor of Chicago.

HHEC brought causes of action against Chicago for breach of contract, breach of the duty of good faith and fair dealing, and negligent and fraudulent misrepresentation. In its first point of error, HHEC argues the trial court erred in rendering summary judgment in favor of Chicago. However, the trial court's summary judgment orders do not specify the grounds upon which the trial court based its decision. Thus, we must review the summary judgment record to determine whether Chicago disproved at least one element of each of HHEC's causes of action.

## Negligent and/or Fraudulent Misrepresentation

■ In HHEC's third point of error, it argues Chicago's failure to disclose the 1993 judgment against Appletree in the original title insurance commitment constituted an affirmative misrepresentation of the title to the property. In its fourth point of error, HHEC argues Chicago's inclusion of the same 1993 judgment as an exception in its revised title insurance commitment was also an affirmative misrepresentation of the title to the property, because that judgment had been paid in full or settled. HHEC contends it relied on Chicago's statements in the title insurance commitments as representations

about the status of the title of the property, and that such statements were negligent or fraudulent misrepresentations.

The business of title insurance is regulated under the Title Insurance Act. TEX. INS.CODE ANN. art. 9.01(B) (Vernon Supp. 2002). A title insurance company may not use any form, or charge any premium, without each having been approved by the texas Commissioner of Insurance. TEX. INS. CODE ANN. art. 9.07 (Vernon Supp.2002). With regard to title insurance commitments, article 9.07B of the Title Insurance Act provides, in part, as follows:

(a) An abstract of title prepared from an abstract plant for a chain of title of real property described in the abstract of title is not title insurance, a commitment for title insurance, or any other title insurance form.

. . . .

(c) A "commitment for title insurance" means a title insurance form that offers to issue a title policy subject to stated exceptions, requirements, and terms.... *The commitment, binder, title policy, or other insurance form is not an abstract of title.* The commitment or binder constitutes a statement of the terms and conditions on which the title insurance company *is willing to issue its policy.* The title insurance policy or other insurance form constitutes a statement of the terms and conditions of the indemnity under the title insurance policy or other form.

TEX. INS.CODE ANN. art. 9.07B(a), (c) (Vernon Supp.2002) (emphasis added).

Our courts have considered title insurance policies as contracts of indemnity. *Chicago Title Ins. Co. v. McDaniel,* 875 S.W.2d 310, 311 (Tex.1994). The only duty imposed on a title insurer is the duty to indemnify its insured against losses caused by defects in title; a title insurer owes no

duty to point out any outstanding encumbrances. *Martinka v. Commonwealth Land Title Ins. Co.*, 836 S.W.2d 773, 777 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

However, a title insurer may be held liable for an affirmative representation regarding title that is a producing cause of damages to an insured. In *First Title Co. v. Garrett*, 860 S.W.2d 74, 77 (Tex.1993), the court held an insurer's affirmative representation in its title insurance commitment that there were no restrictive covenants of record was sufficient to subject the insurer to liability under the DTPA.[3] We must therefore, review the summary judgment record to determine whether Chicago proved, as a matter of law, it made no affirmative representations about the status of title of the property at issue.[4]

Schedule C of the original title insurance commitment reads, in part, as follows:

> Your Policy will not cover loss, costs, attorney's fees, and expenses resulting from the following requirements ... unless you dispose of these matters to our satisfaction, before the date the Policy is issued:
>
> ....
>
> 6. Mechanic's and Materialmen's Lien Affidavit ... in the amount of $649.78, filed for record on July 23, 1997....

The original title insurance commitment lists no other liens or judgments against the property. Schedule C contains no affirmative representation that the mechanic's lien listed is the only encumbrance on the property.

The revised title insurance commitment is identical to the original, but includes "[a]n Abstract of Judgment by Harold Fogey against Rina, Inc. d/b/a Appletree Apartments in the amount of $650,000.00 filed for record on December 13, 1993...." The revised commitment does not state whether the 1993 judgment was paid in full or settled.

Our review of the title insurance commitment forms reveals no affirmative representations concerning the status of the title to the property at issue. Rather, the items shown on Schedule C of the original and revised commitments are listed as possible exceptions to coverage under the title insurance policy to be issued. Further, a page of the commitment entitled "texas Title Insurance Information" provides: "The Commitment is not an opinion or report of your title. It is a contract to issue you a policy subject to the Commitment's terms and requirements."

By the terms of its title insurance commitment, Chicago made no representations it was affirmatively undertaking a duty to report all outstanding encumbrances affecting title. As a matter of law, a title insurance commitment is not an abstract of title. TEX. INS.CODE ANN. art. 9.07B(c). We hold the trial court did not commit error in determining, as a matter of law, Chicago made no negligent or fraudulent misrepresentations concerning the title to the property.

We overrule HHEC's third and fourth points of error.

**Breach of Contract**

■ In its second point of error, HHEC argues Chicago's failure to issue a policy of title insurance constituted a breach of con-

---

3. *See* TEX. BUS. & COMM. CODE ANN. § 17.41 (Vernon Supp.2002). HHEC makes no claim against Chicago under the DTPA.

4. The deposition testimony of Michael Marquez, president of HHEC, is part of the summary judgment record. Marquez testified that no one associated with Chicago made any *oral* representations to HHEC concerning the status of the title to the property.

tract. However, HHEC does not dispute that it never closed on the property involved, never paid any insurance premiums to Chicago, and never purchased a title insurance policy from Chicago.

The first page of the original title insurance commitment provides, "[t]his Commitment ends ninety (90) days from the effective date, unless the Policy is issued sooner, or failure to issue the Policy is our fault. Our liability and obligations to you are under the express terms of this Commitment and end when this Commitment expires." The parties do not dispute that HHEC did not purchase the property within 90 days after the title insurance commitment was issued, or by the final extended closing date, and did not pay any premiums to Chicago or purchase a policy of title insurance. Thus, the title insurance commitment expired without the parties having entered into a contract of insurance. We hold the trial court did not commit error in determining, as a matter of law, no breach of contract occurred.

We overrule HHEC's second point of error.

## Breach of Duty of Good Faith and Fair Dealing

In its fifth point of error, HHEC argues Chicago breached its duty of good faith and fair dealing by refusing to settle HHEC's claim against it.

A cause of action for breach of the duty of good faith and fair dealing lies when it is alleged there is an unreasonable delay in payment, or a failure on the part of the insurer to determine whether there is any reasonable basis for denial or delay. *Arnold v. Nat'l County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987); *Martinka,* 836 S.W.2d at 776. "Thus, a bad faith claim may arise in two instances: (1) when an *insurer* denies an *insured's* claim, or (2) when an *insurer* is obligated to pay proceeds on an *insured's* claim and it is dilato-

ry in paying." *Martinka,* 836 S.W.2d at 776 (emphasis added).

■ In the present case, HHEC did not purchase a title insurance policy from Chicago and was not Chicago's insured; Chicago was not an insurer of HHEC and thus incurred no duty of good faith and fair dealing.

We overrule HHEC's fifth point of error.

Based on the summary judgment record presented, we hold the trial court did not err in rendering summary judgment in favor of Chicago on all of HHEC's claims. Accordingly, we overrule HHEC's first point of error.

## Conclusion

We affirm the judgment of the trial court.