In The
Court of Appeals
For The
First District of Texas
____________
NO. 01-01-00886-CV
____________

ANDREW KAWECKI AND JOANNA KAWECKI, Appellants

v.

FIRST AMERICAN TITLE INSURANCE COMPANY OF TEXAS, INC., Appellee




On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2000-17597A




O P I N I O N
           Appellants, Andrew Kawecki and Joanna Kawecki, appeal a summary judgment
rendered in favor of appellee, First American Title Insurance Company of Texas, Inc. (First
American), in appellants’ suit under the Texas Deceptive Trade Practices–Consumer
Protection Act (DTPA).


 We affirm.
BACKGROUND
           Andrew and Joanna Kawecki purchased a house in Northgate Forest, a subdivision
in Harris County, from International Bank of Commerce, successor to University State Bank,
which had foreclosed on the property in May 1997 when the builder defaulted on his loan. 
The house had not been completed at the time of foreclosure and was still uncompleted in
August 1998 when the Kaweckis signed an agreement to purchase the property for $375,000. 
The Kaweckis knew, when they bought the house, that they would have to provide window
coverings, install appliances, put in insulation, and do electrical work. On the exterior, they
knew they would have to do landscaping, consistent with the other houses in the
neighborhood, that they estimated would cost about $25,000, and would have to repair or
replace the sprinkling system. Their earnest-money contract contained an “addendum for
property subject to mandatory membership in an owners’ association.” This addendum
required the seller to deliver to the Kaweckis a copy of the owners’ association’s by-laws,
restrictive covenants, and rules and regulations and gave notice that the annual assessment
of the owners’ association was $610. 
           On August 4, 1997, First American issued a title policy commitment, which was
delivered to Rick Rogers, the Kaweckis’ real estate broker. The effective date of the
commitment was July 28, 1998. 
           On August 5, 1997, Northgate Forest Community Association (the association) filed
a “Notice of Noncompliance with Dedicatory Instruments” covering the property. This
notice stated that it was filed “to place all persons dealing with the before mentioned property
on notice” that, as of the date of filing, there were violations of the dedicatory instruments
on file in the real property records of the county. The violations were described as “(1)
Failure to submit and obtain approval from the Association Architectural Control Committee
of complete Landscape and Grading Plans; (2) Failure to maintain improvements in good
order; (3) Allowing a nuisance to exist on lot by failing to remove rubbish and construction
debris; (4) Failure to complete construction of improvements; (5) Failure to complete
landscape, hardscape, and grading during normal home construction completion process; (6)
Failure to pay Community Association annual maintenance charges.” The notice further
stated, “If the violations are not cured, the property owners association may institute suit
against the owner of the property for compliance with the covenants, including a request for
an injunction, civil damages, and attorney’s fees, as allowed by law.” The notice did not
place a lien or other encumbrance on the property. 
           On September 2, 1998, at the closing on the sale of the property, a second
commitment was included in the closing documents. This commitment bore the issuance
date of August 4, 1997, but the effective date was August 13, 1998. In the schedule of
exceptions to coverage, this second commitment added the notice of noncompliance filed by
the association. Both of the Kaweckis signed the first page of the commitment at the request
of First American. According to Joanna Kawecki’s deposition testimony, this title
commitment was the first the Kaweckis received. After the Kaweckis moved into the house,
they learned about the notice of noncompliance when someone from the association told
them about it. 
           The Kaweckis sued First American and International Bank of Commerce for
violations of the DTPA, negligence, negligent misrepresentation, fraudulent concealment,
and civil conspiracy to defraud. They requested, as damages, the cost of repairing the
property to bring it into compliance with the deed restrictions, mental anguish damages,
treble damages under the DTPA, and attorney’s fees. With respect to their DTPA cause of
action, the Kaweckis specifically alleged, “First American engaged in false, misleading, and
deceptive acts or practices in the writing of its title commitment and the policy sold to the
Kaweckis, who relied upon the title commitment and policy to their detriment.” They further
alleged that First American “failed to disclose to the Kaweckis the Notice of Non-Compliance” and intended to induce the Kaweckis to enter into a transaction that they would
otherwise not have entered into. 
           The Kaweckis also alleged that First American was negligent in (1) representing that
it was competent to search and disclose the state of title on the property, (2) failing to search
and discover the notice of noncompliance, (3) failing initially to disclose the notice of
noncompliance, and (4) failing to disclose that the notice of noncompliance was later
discovered and disclosed in the second title commitment. The Kaweckis alleged that these
acts were a breach of First American’s duty to the Kaweckis. 
           The Kaweckis alleged that First American made material misrepresentations, but
specified only “impressions purposefully created,” and that First American fraudulently
concealed the existence of the deed restriction violations by having the Kaweckis sign only
the first page of the title commitment at closing. Finally, the Kaweckis alleged that First
American, International Bank of Commerce, and the association, which was not a named
defendant, were liable for civil conspiracy to defraud the Kaweckis by concealing from the
Kaweckis the violation of the deed restrictions. 
           First American filed a rule 166a(c)


 motion for summary judgment, asserting that,
under Texas law, First American owed no duty to the Kaweckis to discover and disclose the
notice of noncompliance. First American also moved for summary judgment on the
Kaweckis’ other causes of action. The trial court granted the motion without stating the
grounds upon which it was granted. In their appeal, the Kaweckis challenge only the DTPA
as a basis for the summary judgment. 
DISCUSSION
Standard of Review
           Under rule 166a(c), summary judgment is proper only when the movant establishes
that there is no genuine issue of material fact and that the movant is entitled to judgment as
a matter of law. Tex. R. Civ. P. 166a(c); Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d
640, 644 (Tex. 1995); Lawson v. B Four Corp., 888 S.W.2d 31, 34 (Tex. App.—Houston [1st
Dist.] 1994, writ denied). In reviewing a summary judgment, we must indulge every
reasonable inference in favor of the nonmovant and resolve any doubts in its favor. Johnson,
891 S.W.2d at 644; Lawson, 888 S.W.2d at 33. We will take all evidence favorable to the
nonmovant as true. Id. As movant, the defendant is entitled to summary judgment if the
evidence disproves as a matter of law at least one element of each of the plaintiff’s causes
of action. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Marchal v. Webb,
859 S.W.2d 408, 412 (Tex. App.—Houston [1st Dist.] 1993, writ denied). When the
judgment does not specify the ground on which the trial court rendered judgment, we will
affirm the summary judgment if any of the theories advanced in the motion for summary
judgment and preserved on appeal is meritorious. See State Farm Fire & Cas. Co. v. S.S.,
858 S.W.2d 374, 380 (Tex. 1993). 
DTPA: Failure to Disclose
           The Kaweckis present the following two issues on appeal: 
I.Whether the Texas common law, holding that a title insurance company
has no duty to discover and then disclose a title defect or other encumbrance
as an exception in a title insurance policy under applicable Texas law will
preclude a title insurance company from exposure to liability under the failure-to-disclose provision of the DTPA, where the title insurance company
previously omits a notice of noncompliance in an initial title commitment and
then amends the title commitment to except the notice of noncompliance from
coverage under the title insurance policy at closing of the real estate
transaction and thereby affects the services to be rendered under the title
insurance policy. 
 
II.Whether the Texas common law holding that a title insurance company
has no duty to discover and then disclose a title defect or other encumbrance
as an exception in a title insurance policy, under applicable Texas law will
preclude a title insurance company from exposure to liability under the failure-to-disclose provision of the DTPA, where the consumer asserts the purchase
of the underlying property as the basis of their complaint, not the services
provided by the title insurance company, and the title insurance company fails
to expressly disclose to the insured that it had excepted a notice of
noncompliance from coverage under the title insurance policy at closing in
connection with the consumer’s purchase of the underlying property. 
Because the Kaweckis seek to impose liability on First American under the failure-to-disclose provision of the DTPA, we construe the Kaweckis’ complaints to be that First
American (1) did not discover and disclose the notice of noncompliance before issuing the
initial commitment and (2) did not adequately disclose the fact that the notice was excepted
from coverage in the second commitment. 
           A title insurance company owes no duty to its insured to disclose any outstanding
encumbrances on the property insured. Martinka v. Commonwealth Land Title Ins. Co., 836
S.W.2d 773, 777 (Tex. App.—Houston [1st Dist.] 1992, writ denied). The title insurance
company has the duty only to indemnify the insured against loss caused by defects in the title. 
Chicago Title Ins. Co. v. McDaniel, 875 S.W.2d 310, 311 (Tex. 1994); Martinka, 836 S.W.2d
at 777. This rule applies to allegations of liability for nondisclosure under the DTPA as well
as allegations of negligence. Martinka, 836 S.W.2d at 778. However, a title insurance
company may be liable under the DTPA for an affirmative representation that is the
producing cause of damages to the insured. McDaniel, 875 S.W.2d at 311. 
           In this case, the Kaweckis alleged in their petition, “First American and International
Bank failed to disclose to the Kaweckis the Notice of Non-Compliance with the applicable
deed restrictions, which information was in each defendant’s possession on or before the date
of closing. . . . The Kaweckis relied or should be presumed to have relied on the absence of
this information. . . .” 
           First American asserts that the notice had not been filed by August 4, 1997, the
“issued date” of the first commitment and, therefore, could not have been disclosed on that
date. The Kaweckis contend that the first commitment included a record search up to July
28, 1998, the “effective date” of the commitment. However, the date of the completion of
the record search of the first commitment is irrelevant to this case, because First American
had no duty to discover and disclose the existence of any encumbrances on the property. See
Martinka, 836 S.W.2d at 777. The Kaweckis have not alleged that First American made any
affirmative misrepresentations regarding the commitment or the title policy. See id.;
McDaniel, 875 S.W.2d at 311. Moreover, Joanna Kawecki testified that they did not receive
the first commitment. Therefore, the Kaweckis could not have relied on it. 
           The second commitment, which was given to the Kaweckis at closing and formed the
basis for the Kaweckis’ second complaint, included an exception to coverage for the notice
of noncompliance. Both of the Kaweckis signed the first page of this commitment. The
Kaweckis argue that the second commitment was included in “numerous multiple forms
thrown on the table” and that they were told to “just sign here.” They do not allege that they
were prevented from reading the documents that they signed. Parties are obligated to protect
themselves by reading what they sign because they are presumed to know the contents of the
documents after signing them.


 G-W-L, Inc. v. Robichaux, 643 S.W.2d 392, 393 (Tex. 1982),
overruled on other grounds, Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 355 (Tex.
1987). We hold that the delivery of the commitment to the Kaweckis at closing was
sufficient disclosure of the notice of non-compliance with the restrictive covenants and the
exception of the notice from coverage. 
           We overrule the Kaweckis’ two issues.
           We affirm the judgment. 
 
 
                                                                             Sam Nuchia
                                                                             Justice
Panel consists of Justices Nuchia, Jennings, and Radack. 
Do not publish. Tex. R. App. P. 47.