COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-152-CV

 

 

TONI SOLANO                                                                     APPELLANT

 

                                                      V.

 

LANDAMERICA COMMONWEALTH 

TITLE OF FORT WORTH, INC., 

F/K/A COMMONWEALTH LAND 

TITLE COMPANY OF FORT 

WORTH; COMMONWEALTH 

LAND TITLE INSURANCE COMPANY; 

LANDAMERICA FINANCIAL GROUP, 

INC., D/B/A COMMONWEALTH LAND 

TITLE COMPANY OF FORT
WORTH                                        APPELLEES

 

                                                  ------------

 

             FROM
THE 348TH DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION

 

                                                  ------------

Introduction








Appellant Toni Solano appeals
the trial court=s order
granting appellees= no evidence
and traditional motions for summary judgment. 
Appellant challenges various aspects of the trial court=s determinations that she failed to present evidence establishing a
genuine issue of material fact on the elements of her fraud and Texas Deceptive
Trade Practices-Consumer Protection Act (DTPA) claims and also that appellees
were entitled to judgment as a matter of law based on the summary judgment
evidence they presented.[1]  See Tex. R. Civ. P. 166a(c), (i).  We affirm. 


Background Facts








In February 2001, John Solano
entered into a contract to purchase real estate from Alpha Development for the
purpose of building a home.  The contract
(negotiated at a price just under $50,000) described the property that Mr.
Solano was purchasing as ALot 43,
Block 1, the Hills of Gilmore Creek Addition, City of Fort Worth, Tarrant
County, Texas.@  The contract indicated that Alpha Development
was to furnish to Mr. Solano, at its own expense, a title policy issued by
Commonwealth Land and Title (which is the common name for the related title
company entities comprising the appellees). 
The contract stated, however, that the title policy would be Asubject to the promulgated exclusions (including existing building and
zoning ordinances),@ and a list
of other exceptions.  The contract also
explained that Alpha Development would provide Mr. Solano with a survey, and
that Mr. Solano would have seven days after receipt of either the title
commitment or survey to Aobject in
writing to matters disclosed,@ or such objections would be waived. 
Finally, the contract instructed Mr. Solano that it was Aintended to be legally binding. 
READ IT CAREFULLY.  If you do not
understand the effect of this contract, consult your attorney BEFORE signing.@[2] 








Pursuant to the contract,
appellees generated a preliminary title insurance Aorder@ which
described the property by the lot and block numbers contained in the
contract.  Appellees then issued a title
insurance commitment, which was Asubject to the following terms of the Policy: Insuring Provisions,
Conditions and Stipulations, and Exclusions.@[3]  The commitment contained a
metes and bounds description of the property instead of the lot and block
number contained in Mr. Solano=s real estate purchase contract with Alpha Development.  Through attached schedules, the commitment
also incorporated a list of exceptions from coverage, explained that the
commitment was Anot an
opinion or report@ of the
title, and noted that further exclusions from coverage would exist in the final
policy though they were not revealed in the commitment.  Finally, the commitment advised Mr. Solano
that  he could obtain a copy of the
actual policy form upon request.  

On March 14, 2001, Thomas
Vogt, a registered land surveyor, completed a survey of the land subject to the
contract.  The survey noted that the
property was an unrecorded plat and gave only a metes and bounds description of
the property, rather than the lot and block description contained in Mr. Solano=s contract with Alpha Development.   









Appellant alleges that in
April 2001, while she was out of state, Mr. Solano was told that the contract
on the house needed to be emergently finalized and closed.  Vanessa McCaffrey, a closing agent with the
Brown Law Firm, acted on behalf of appellees on the date the transaction
closed.  Appellant asserts that upon
arriving at the closing, Mr. Solano was instructed that he had the authority to
sign closing documents on behalf of appellant and was told to sign his and
appellant=s names to
the documents.  During closing, Mr.
Solano signed (apparently on behalf of both appellant and himself) a U.S.
Department of Housing and Urban Development (HUD) settlement statement which
designated the property by its erroneous lot and block description.  The HUD settlement statement listed Alpha
Development as the seller, Cendant Mortgage as the lender, and Commonwealth
Land and Title as the settlement agent.  








That same day, Mr. Solano
represented that prior to closing, he had received Vogt=s survey and the title commitment. 
He also acknowledged that (1) the property Ais, or may be, subject to zoning laws, regulations and ordinances,
and/or building codes of municipal, county, and other governmental authorities,@ (2) the policy excluded Afrom coverage loss caused by the exercise of governmental policy power
of the enforcement or violation of any law or government regulation, including
building and zoning ordinances,@ and (3) he had been Aadvised to seek the advice of competent real estate counsel.@[4]  Upon closing the transaction,
Alpha Development transferred a warranty deed to Mr. Solano and appellant which
described the property by metes and bounds. 
The final title policy issued to the Solanos excluded from coverage any Aloss caused by the exercise of governmental police power . . . or
violation of any law or government regulation,@ specifically including Aland division,@ and also
contained several other exclusions and exceptions.  

The Solanos sued appellees as
well as Thomas Vogt (the surveyor), Cendant Mortgage Corporation, the Brown Law
Firm and Steven S. Brown (the title agent and the preparer of the closing
documents), Vanessa McCaffrey (the notary at closing), and Alpha Development.[5]  The petition alleged that, in various ways,
these parties (individually and sometimes collectively) committed common law
fraud, statutory fraud, negligence, negligent misrepresentation, and violations
of the DTPA and that they also breached their fiduciary duties and their
respective alleged contracts with the Solanos. 
The petition specifically alleged that appellees failed to inform the
Solanos that the property was not legally platted or suitable for housing,
erroneously represented that the property was correctly platted, and forced Mr.
Solano to sign closing documents on behalf of appellant.  








The Solanos claimed that
because of these acts, they could not obtain proper permits for the property
and they therefore could not properly construct or use the property as their
residence.[6]  They also asserted that the land they had
purchased did not contain as many acres as they had been led to believe.  In their petition, the Solanos requested
damages and also asked the trial court to declare their promissory note and
deed of trust invalid.  In response to
the second amended petition, in March 2006 appellees filed an answer in which
they generally denied the Solanos= claims, pleaded several affirmative defenses (including a release of
claims through a hold harmless agreement and that the Solanos= losses, if any, were excluded by the terms of the title policy), and
specially excepted to portions of the petition.   








In April 2006, all parties
(including the Solanos through counsel) entered into an agreed scheduling order
that set deadlines for amending pleadings, serving expert reports, completing
discovery, and serving any motions for summary judgment.  On June 19, 2006, through a rule 11
agreement, counsel for appellant and appellees agreed to extend the deadline
for service of motions for summary judgment until July 21, 2006 (fourteen days
after the original deadline). 

On July 21, 2006, in
accordance with the rule 11 agreement, appellees filed (in one document)
traditional and no evidence motions for summary judgment on all of the Solanos= claims against them.  In
support of the traditional motion, appellees attached affidavits and provided
supporting documentation related to the Solanos= real estate transaction.  In
the no evidence motion, appellees listed each cause of action which had been
pled by the Solanos, specified the elements required to sustain such claims,
and asserted that the Solanos had no evidence to support these elements.  








The Solanos filed a pro se
response (comprising approximately 600 pages of argument interspersed with
various documents related to the Solanos' transaction) which reiterated the
assertion that appellees were liable on all elements of the Solanos= claims and asserted that the documents and affidavits attached to
appellees= motion were
@false,@ Ainvalid,@ and Aaltered.@[7]  Many of the arguments made and
documents provided by the Solanos in their response related to defendants other
than appellees (who were the sole movants for summary judgment at that time) or
referred to other issues regarding appellees than the ones contained within the
Solanos= latest pleading.  Also, most of
the documents that the Solanos submitted in their response contained words and
other marks placed by appellant in an attempt to accentuate the alleged
importance of the documents= provisions. 

On August 17, 2006, appellant
filed a sworn document labeled as an attachment to her summary judgment
response.  In that document, she
requested more time to further respond to appellees= motions for summary judgment because she alleged that appellees had
failed to respond to written discovery and that the affidavits that appellees
had attached to their motion were made in bad faith.  While the court=s decision on appellees= motions remained pending, appellant also filed various other motions
requesting (among other things) that the trial court order mediation, compel
discovery, and grant a continuance to allow her time to find new counsel.[8]       








On August 28, 2006, the trial
court granted appellees= motions.  In the next few months, appellant filed
several documents asking the trial court to reconsider its summary judgment
ruling.  Among other contentions,
appellant alleged in these documents that she should have been given more time
to seek counsel, that the trial judge improperly evaluated the summary judgment
evidence, and that appellees= motions were filed in bad faith and in violation of her
interpretation of the June 19, 2006 rule 11 agreement.   

On October 31, 2006, in one
filing, appellant submitted a traditional summary judgment motion against all
of the defendants in the underlying suit, along with an Aanswer to all summary motions filed by defendants@ and another request that the trial court Areconsider [the] motion granted to [appellees].@  The filing comprised more than
1,500 pages of further arguments and documents related to the Solanos= transactions.  








In December 2006, after
appellant had filed assorted other documents (including Aquestions for the jury@ and a proposed jury charge), appellees filed a motion to sever the
claims against them from the claims remaining against the other defendants,
thereby making final the summary judgment that the trial court had granted in
their favor.  After appellant objected
and the trial court conducted a hearing, the trial court granted appellees= severance motion.  Among
various other motions and documents, appellant then filed a motion for new
trial (which was denied following a hearing) and perfected this appeal.[9]  

The Granting of Appellees= Summary Judgment Motions

In her sole preserved issue,
appellant contends that the trial court improperly granted appellees= summary judgment motions because the Aevidence does not support the verdict of the trial court about
violations of the DTPA, and the questions about fraud.@    

When a party moves for
summary judgment under both rules 166a(c) and 166a(i) of the rules of civil
procedure, we will first review the trial court=s judgment under the no evidence standards of rule 166a(i).  See Tex. R. Civ. P. 166a(c), (i); Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If appellant failed to produce more than a
scintilla of evidence under those standards, then there is no need to analyze
whether appellees= summary
judgment proof satisfied the rule 166a(c) burden.  See Ford Motor Co., 135 S.W.3d at 600.









After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73
S.W.3d 193, 207 (Tex. 2002).  The trial
court must grant the motion unless the nonmovant produces summary judgment
evidence that raises a genuine issue of material fact on the challenged
elements.  See Tex. R. Civ. P.
166a(i); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002).








When reviewing a no evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan,
199 S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan Antonio 1998, pet. denied). 
Less than a scintilla of evidence exists when the evidence is so weak
that it does nothing more than create a mere surmise or suspicion of a
fact.  Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983).  More than
a scintilla of evidence exists when the evidence would enable reasonable and
fair-minded people to reach different conclusions.  Ford Motor Co., 135 S.W.3d at
601.  In reviewing the trial court=s decision, we may only consider the material on file as of the time the
summary judgment was granted. 
Brookshire v. Longhorn Chevrolet Co., 788 S.W.2d 209, 213 (Tex. App.CFort Worth 1990,
no writ).

Pleadings, even if sworn to,
do not constitute summary judgment proof. 
Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d
656, 660 (Tex. 1995).  However, the
parties= pleadings control the evidence and arguments which are properly
considered in a summary judgment decision. 
See SmithKline Beecham Corp. v. Doe, 903 S.W.2d 347, 354B55 (Tex. 1995); Ely v. Gen. Motors Corp., 927 S.W.2d 774, 782
(Tex. App.CTexarkana
1996, writ denied) (explaining that the pleadings Aframe the issues involved in ruling upon the summary judgment motion@); Leinen v. Buffington=s Bayou City Serv. Co., 824 S.W.2d
682, 685 (Tex. App.CHouston
[14th Dist.] 1992, no writ) (upholding the trial court=s refusal to consider a plaintiff=s claim which was not pled at the time of the summary judgment
hearing).








In this case, at the time
appellees= filed their
motions for summary judgment, appellant=s petition contended that appellees were liable under the various
legal theories pled only because they (1) failed to inform the Solanos that the
property was not legally platted or suitable for housing, (2) generated
documents (particularly the HUD settlement statement) that used nonexistent lot
and block numbers and therefore erroneously represented that the property was
correctly platted, and (3) falsely represented that Mr. Solano had authority to
sign closing documents on behalf of appellant and forced him to sign the
documents.  We will restrict our analysis
of the summary judgment evidence presented[10]
and of the trial court=s decision
regarding that evidence to these three particular allegations in relation to
appellees= no evidence
motion on appellant=s DTPA and
fraud claims.[11]  See Ely, 927 S.W.2d at 782; Leinen,
824 S.W.2d at 685.     








Appellant=s second amended petition alleged that appellees violated the DTPA
through several specific provisions. 
Specifically, appellant alleged that appellees violated section
17.46(b)(5), (7), (12), (19), and (23) of the business and commerce code.  Tex. Bus. & Com. Code Ann. ' 17.46 (b)(5), (7), (12), (19), (23) (Vernon Supp. 2008).  These provisions respectively create
violations of the DTPA when a defendant commits false, misleading, or deceptive
acts or practices by 

(5)
representing that goods or services have sponsorship, approval,
characteristics, ingredients, uses, benefits, or quantities which they do not
have or that a person has a sponsorship, approval, status, affiliation, or
connection which he does not; 

 

. . .

 

(7)
representing that goods or services are of a particular standard, quality, or
grade, or that goods are of a particular style or model, if they are of
another;

 

. . .

 

(12)
representing that an agreement confers or involves rights, remedies, or
obligations which it does not have or involve, or which are prohibited by law;

 

. . .

 

(19)
using or employing a chain referral sales plan in connection with the sale or
offer to sell of goods, merchandise, or anything of value, which uses the sales
technique, plan, arrangement, or agreement in which the buyer or prospective
buyer is offered the opportunity to purchase merchandise or goods and in
connection with the purchase receives the seller=s
promise or representation that the buyer shall have the right to receive
compensation or consideration in any form for furnishing to the seller the
names of other prospective buyers if receipt of the compensation or
consideration is contingent upon the occurrence of an event subsequent to the
time the buyer purchases the merchandise or goods;

 

. . .








(23)
filing suit founded upon a written contractual obligation of and signed by the
defendant to pay money arising out of or based on a consumer transaction for
goods, services, loans, or extensions of credit intended primarily for
personal, family, household, or agricultural use in any county other than in
the county in which the defendant resides at the time of the commencement of
the action or in the county in which the defendant in fact signed the contract;
provided, however, that a violation of this subsection shall not occur where it
is shown by the person filing such suit he neither knew or had reason to know
that the county in which such suit was filed was neither the county in which
the defendant resides at the commencement of the suit nor the county in which
the defendant in fact signed the contract.

 

Id.;
see also id. ' 17.50(a)
(also requiring detrimental reliance and causation of economic damages in DTPA
claims). 

Appellant also claimed that
appellees committed common law fraud and statutory fraud under Chapter 27 of
the business and commerce code.  To
sustain a common law fraud claim, a plaintiff must demonstrate that 

(1) a
material representation was made; (2) the representation was false; (3) when
the representation was made, the speaker knew it was false or made it
recklessly without any knowledge of the truth and as a positive assertion; (4)
the representation was made with the intention that it be acted upon by the
other party; (5) the party acted in reliance upon the representation; and (6)
the party suffered injury.  

 

Johnson & Higgins of Tex., Inc. v.
Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex.
1998).  To prove statutory fraud in a
real estate transaction, the plaintiff must show that there is a








(1)     false representation of a past or existing
material fact, when the false representation is

(A)    made to a person for the purpose of inducing
that person to enter into a contract; and

(B)     relied on by that person in entering into
that contract; or

(2)     false promise to do an act, when the false
promise is

(A)    material;

(B)     made with the intention of not fulfilling
it;

(C)    made to a person for the purpose of inducing
that person to enter into a contract; and

(D)    relied on by that person in entering into
that contract.

 

Tex.
Bus. & Com. Code Ann. ' 27.01(a) (Vernon 2002).

 

In their no evidence motion,
appellees listed these elements, contended that there was no evidence to prove
any of them, and concluded that they were therefore entitled to judgment as a
matter of law.  Our review of the record
indicates that there was no specific allegation in appellant=s pleading nor summary judgment evidence to substantiate that
appellees used a chain referral sales plan or that they filed any suit based
upon a written contractual obligation. 
The trial court therefore properly granted the no evidence motion on
these specific DTPA grounds.  See id.
' 17.46 (b)(19), (23).           

The remaining DTPA grounds
and both the common law and statutory fraud claims, as listed above, each
require a misrepresentation which is relied on to a plaintiff=s detriment.  Because of that
similarity, we will examine whether there was more than a scintilla of evidence
of appellees= allegedly
improper conduct that could satisfy this standard.








Did appellees have a duty to inform appellant that the property was
not legally platted or suitable for housing, and if so, did appellant present
more than a scintilla of evidence that they failed to satisfy this duty? 

 

Fraud is not limited to
affirmative representations; rather, it may exist when a defendant has a legal
duty to disclose certain facts but deliberately fails to do so.  Bradford v. Vento, 48 S.W.3d 749, 755
(Tex. 2001).  Whether a duty to disclose
certain information exists is a question of law.  Id. 
In her pleading, appellant contended that appellees had a legal duty to
inform her that the property Mr. Solano had contracted for was not legally
platted or suitable for housing.  








A title insurance policy is a
contract of indemnity, and the only duty imposed by such a policy is the
insurer=s duty to indemnify the insured against losses caused by defects in
title.  Chicago Title Ins. Co. v.
McDaniel, 875 S.W.2d 310, 311 (Tex. 1994). 
The issuance of a title policy does not create a representation
regarding the status of the property=s title; rather, it comprises an agreement to indemnify the insured
against losses caused by any defects in title. 
Id. (holding that a title policy did not create a DTPA violation
when, despite the assurances contained in the policy, a preexisting lien
existed on the property); see Tri‑Legends Corp. v. Ticor Title Ins.
Co. of Cal., 889 S.W.2d 432, 443B44 (Tex. App.CHouston
[14th Dist.] 1994, writ denied); Martinka v. Commonwealth Land Title Ins.
Co., 836 S.W.2d 773, 777 (Tex. App.CHouston [1st Dist.] 1992, writ denied) (explaining that a Atitle insurance company is not a title abstractor and owes no duty to
examine title@).

In Martinka, a
plaintiff sued the title company that had insured his purchase of a residence
for failing to disclose that a lis pendens[12]
had been filed.  Martinka, 836
S.W.2d at 774B75.  After the trial court granted the title
company=s summary judgment motion, Martinka contended on appeal that the title
company owed a duty to inform him of the lis pendens before issuing its title
policy.  Id. at 775.  The appellate court rejected Martinka=s argument, explaining that a title company Aowes no duty to point out any outstanding encumbrances.@  Id. at 777.  The court reasoned that a title insurance
company,

before
issuing a policy of title insurance, must necessarily take steps to inform itself
of the status of the title to be insured. 
In the search for the information upon which must depend the decision to
either issue or decline to commit itself to issue a policy, the insurance
company obviously investigates the title for its own use and benefit to
determine whether it will undertake the risk. 
The title information on which the company bases its decision relates to
the condition of the title held by the grantor and is not made for the
prospective grantee or lienholder to whom the policy will finally issue.

 








Id. at
777B78 (emphasis added) (quoting Tamburine v. Ctr. Sav. Ass=n, 583 S.W.2d 942, 948B49 (Tex. Civ. App.CTyler 1979, writ ref=d n.r.e.)).  Based on this
reasoning, and on the fact that the existence of the lis pendens did not affect
the title company=s obligation
to indemnify the plaintiff, the Martinka court held that the title
company had no duty to disclose the lis pendens.  Id. at 778B79.  In other words, A[a]lthough the insurer must examine the title (or have someone do so
on its behalf), this investigation is done for the insurer=s own information in order to determine whether or not it will commit
itself to issue a policy.  The
investigation is not done for the benefit of the party insured.@  Stewart Title Guar. Co. v.
Cheatham, 764 S.W.2d 315, 320 (Tex. App.CTexarkana 1988, writ denied).

It is undisputed by appellees
that during their investigation into the property at issue, they learned that
the property was unplatted.  However,
based on the precedent cited above, we hold that the relevance of this
discovery was limited to appellees= decision on whether to insure the property, and that the appellees
therefore had no legal duty to disclose the unplatted nature of the property to
appellant.           













Our holding is further supported
by Texas precedent which explains that Athe concept of >title= speaks to ownership of rights in property, not to the condition or
value of the property.  Thus, a defect
in, or encumbrance on, title (such as would trigger coverage under a title
insurance policy) must involve a flaw in the ownership rights in the property.@  Hanson Bus. Park, L.P. v.
First Nat=l Title Ins.
Co., 209 S.W.3d 867, 870 (Tex. App.CDallas 2006, pet. denied). 
Appellant=s pleading
does not contend that the unplatted nature of the property at issue deprived
her of any ownership right in the property which was covered by her
title policy; rather, it asserts that the property being unplatted (coupled
with associated governmental regulations on the property) prevented her from
the use of the property as a residence.[13]  For this reason as well, we conclude that
appellees, in their limited role as a title indemnitor, had no duty to disclose
the unplatted condition of the property at issue.[14]  See McDaniel, 875 S.W.2d at 311.  Because the only pled theories under the DTPA
all required affirmative representations, because fraud by a failure to
disclose requires a legal duty to disclose, and because we have concluded that
appellees had no such duty, appellees= nondisclosure cannot form the basis of appellant=s fraud or DTPA claims.  See
Bradford, 48 S.W.3d at 755; W.L. Lindemann Operating Co. v. Strange,
256 S.W.3d 766, 776 (Tex. App.CFort Worth 2008, pet. filed) (requiring a duty to disclose for fraud
by concealment or nondisclosure).








         Moreover, even if appellees did have a
duty in this respect, the summary judgment evidence submitted by appellant
indicates that before closing occurred, Mr. Solano was presented with documents
disclosing the unplatted condition of the property.  For instance, the survey provided pursuant to
Mr. Solano=s contract
with Alpha Development described the property as an AUNRECORDED PLAT@ and
proceeded to contain a metes and bounds description of the property.  Appellant acknowledges in her pleading and in
her summary judgment evidence that Mr. Solano received a copy of the survey
prior to closing.  

Additionally, the Solanos= real estate contract with Alpha Development indicated that Mr. Solano
had seven days after receiving the survey to review it and to object to any
matters that it disclosed, and that upon such an objection, Alpha Development
would extend closing and cure the objections. 
Another provision of the contract indicated that closing would occur
within seven days after objections Ato matters disclosed in the . . . survey have been cured.@  We find nothing in the record
indicating that any objection was made to the survey=s unrecorded, metes and bounds description of the property.   

For all of these reasons, the
alleged failure of appellees to disclose to appellant that the property was not
legally platted or suitable for housing cannot form the basis of appellant=s fraud or DTPA claims.

Did appellant present more than a scintilla of evidence that appellees
erroneously represented that the property was legally platted and that  this representation was relied upon?

 








Despite having no duty to
disclose title defects, a title company can be liable for affirmative
representations that cause damages to the insured.  See McDaniel, 875 S.W.2d at 311; First
Title Co. of Waco v. Garrett, 860 S.W.2d 74, 76 (Tex. 1993); 3Z
Corp. v. Stewart Title Guar. Co., 851 S.W.2d 933, 937 (Tex. App.CBeaumont 1993, writ denied) (stating that the Alaw is settled that a title company does not owe a duty to the insured
to discover and disclose a title defect,@ but that a Atitle
company has a duty to know if its representations are true@).  Appellant=s pleading alleged that appellees provided closing documents to Mr.
Solano that contained  erroneous lot and
block descriptions of the property and that these documents misled him as to
the property he was purchasing.  

In her response to appellees= motion, appellant included a copy of the HUD settlement statement, signed
by Mr. Solano, which refers to the property by a lot and block number in the AHILLS OF GILMORE CREEK ADDITION . . . FORT WORTH, TEXAS.@[15]  Appellees have acknowledged
that they provided this document to Mr. Solano at closing, and they have not
disputed that the document=s recitation of the lot and block number is incorrect.   








In their summary judgment
motion as to appellant=s claims
under the DTPA and of common law fraud and statutory fraud, appellees contended
that there was no evidence that the Solanos relied on any material
representation.  As is described above,
reliance is required as an element of all of these claims. 

From our review of the
record, we have located no evidence provided in appellant=s summary judgment response establishing that, though the property
description in the HUD settlement statement may have been incorrect, Mr. Solano
relied on this specific description in closing the transaction or that he even
noticed that the description was contained in the statement.  For instance, appellant provided no affidavit
or deposition transcript in which Mr. Solano explained his reliance on the
statement (or on any document submitted to him at closing).  Nor has appellant explained how any other
documents in the summary judgment record qualify as evidence of reliance.[16]    








For this reason, summary
judgment was properly granted on appellant=s DTPA and fraud claims on the basis of appellees= alleged misrepresentation. 
See Wayment v. Tex. Kenworth Co., 248 S.W.3d 883, 886 (Tex. App.CDallas 2008, no pet.) (affirming the granting of summary judgment on a
DTPA claim because the plaintiff did not satisfy its burden to present some
evidence of reliance); Head v. Finley, No. 02‑03‑00296‑CV,
2004 WL 1699895, at *5B6 (Tex. App.CFort Worth July 29, 2004, pet. denied) (mem. op.) (upholding the
granting of summary judgment in a case concerning a real estate transaction on
the plaintiff=s DTPA,
fraud, and statutory fraud claims because the plaintiff failed to produce any
evidence of reliance).

Appellant's pleading also
contained a DTPA claim against appellees based on their alleged unconscionable
actions.  See Tex. Bus. & Com.
Code Ann. '
17.50(a)(3).  Appellees challenged this
claim specifically in their no evidence motion.








An unconscionable action
under the DTPA requires an Aact or practice which, to a consumer=s detriment, takes advantage of the lack of knowledge, ability,
experience, or capacity of the consumer to a grossly unfair degree.@  Id. ' 17.45(5) (Vernon Supp. 2008); see Bradford, 48 S.W.3d at 760
(adding that an unconscionable act under the DTPA is one that is Aglaringly noticeable, flagrant, complete and unmitigated@).  Having determined that
appellees had no duty to disclose the unplatted nature of the property, that
Mr. Solano was nonetheless provided with a document indicating that the
property was unplatted, and that no evidence of reliance was presented by
appellant on any misrepresentations, we also conclude that there was no
evidence presented which would satisfy the unconscionable standard and that the
trial court properly granted summary judgment on this basis.   

Did appellant present more than a scintilla of evidence that appellees
forced Mr. Solano to forge appellant=s signature on documents at
closing? 

Finally, the Solanos= pleading contended that appellees defrauded them by requiring Mr.
Solano to forge appellant=s signature
on several closing documents and by issuing the title insurance policy based on
those forgeries.[17]









If a person signs another=s name to a document with authority to do so, there is no forgery.  See In re Estate of Flores, 76 S.W.3d 624,
630 (Tex. App.CCorpus
Christi 2002, no pet.) (explaining that Aforgery is defined as altering, making, completing, executing, or
authenticating a writing so that it purports to be the act of another who did
not authorize that act@); First
Coppell Bank v. Smith, 742 S.W.2d 454, 460 (Tex. App.CDallas 1987, no writ), overruled on other grounds, Fortune
Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 678 (Tex. 2000) (concluding that
forgery was established because the witness testified Aunequivocally that she did not authorize anyone to sign her name to
the deed of trust@); see
also Tex. Penal Code Ann. ' 32.21(a)(1)(A)(i) (Vernon Supp. 2008).  An individual has the authority to sign a
spouse=s name to a document when acting as an agent for that spouse.  See Tex. Fam. Code Ann. ' 3.201(a)(1) (Vernon 2006); Nelson v. Citizens Bank and Trust
Co. of Baytown, Tex., 881 S.W.2d 128, 131 (Tex. App.CHouston [1st Dist.] 1994, no writ) (noting however that a Aspouse does not act as an agent for the other spouse solely because of
the marriage relationship@).   








In their motion, appellees
contended that there was no evidence that appellant=s signature was forged at their insistence or that any act undertaken
for appellant was done without her knowledge and consent.  Our review of the record indicates that
appellant submitted no affidavit or other summary judgment evidence in response
to appellees= motion
which indicated that her husband did not have the authority to sign closing
documents on her behalf.  While some of
appellant=s unsworn
arguments in her response at the trial level 
and some of appellant=s statements during her argument at the hearing on appellees= motion contend that no such authority was given, these statements
cannot be considered as summary judgment evidence in opposition to appellees= no evidence motion.[18]  See Medford v. Medford, 68 S.W.3d
242, 247 (Tex. App.CFort Worth
2002, no pet. ) (stating that A[u]nauthenticated or unsworn documents, or documents not supported by
any affidavit, are not entitled to consideration as summary judgment evidence@); Madeksho v. Abraham, Watkins, Nichols & Friend,
57 S.W.3d 448, 455 (Tex. App.CHouston [14th Dist.] 2001, pet. denied) (noting that conclusory
arguments contained in a response to a summary judgment motion are not
evidence); Quanaim v. Frasco Rest. & Catering, 17 S.W.3d 30, 42
(Tex. App.CHouston
[14th Dist.] 2000, pet. denied) (explaining that Aneither the motion for summary judgment, nor the response, even if
sworn, is ever proper summary judgment proof@).








There was also no competent
evidence submitted in appellant=s response to appellees= motion to substantiate the other allegations contained in appellant=s pleading related to the alleged forgery: that appellees told Mr.
Solano that an emergency closing was required, that Mr. Solano questioned
whether he had the authority to sign for appellant, that appellees told Mr.
Solano that because Texas is a community property state, he automatically had
authority to sign for appellant, or that they insisted that he sign the
documents on her behalf.  The mere
pleading of these allegations was insufficient to defeat appellees= no evidence motion.  See
Laidlaw Waste Sys., Inc., 904 S.W.2d at 660.  Therefore, the trial court properly granted
appellees= no evidence
motion for summary judgment on this basis as well.   

Because the record
establishes that appellees moved for a no evidence summary judgment on the DTPA
and fraud theories that had been pleaded against them, and because appellant
failed to present more than a scintilla of competent summary judgment evidence
to substantiate these claims, the trial court properly granted appellees= motion.  Appellant=s only preserved issue is overruled.

Conclusion 

Having overruled appellant=s only preserved issue, we affirm the trial court=s judgment.

 

 

PER
CURIAM

 

PANEL:  LIVINGSTON, DAUPHINOT,
and MCCOY, JJ.

DELIVERED:  December 4,
2008  











[1]Of
the sixteen issues raised in her brief, fifteen are listed as stand-alone
statements, without any further explanation of the issues presented, any
supporting argument, or any associated reference to relevant legal authorities.
Many of these fifteen issues substantially relate to the trial court=s
decision to grant appellees= summary judgment
motions.  Other issues only tangentially
relate to the trial court=s
decision or relate to parties included as defendants at the trial court level
that are not parties to this appeal. 
Because none of these fifteen issues are adequately briefed, we decline
to address them.  See Tex. R. App.
P. 38.1(h); Gray v. Nash, 259 S.W.3d 286, 294 (Tex. App.CFort
Worth 2008, pet. denied) (deciding that issues were waived because of
inadequate briefing).  Rather, we will
confine our analysis to the sole issue which was adequately briefedCthe
trial court=s
decision to grant appellees= motion on appellant=s
fraud and DTPA claims.  Appellant labeled
this issue as AIssue
1: The evidence does not support the verdict of the trial court about
violations of the DTPA, and the questions about fraud.@ 





[2]In a
subsequent transaction, Mr. Solano obtained $225,000 in financing from Cendant
Mortgage Corporation to build his residence on the property he had purchased
from Alpha Development.   





[3]The
commitment also stated that a title policy would be issued upon compliance with
certain delineated conditions and upon payment of a premium. 





[4]Nothing
in the record indicates that Mr. Solano obtained counsel to complete the real
estate transaction.





[5]On
November 29, 2005, the Solanos filed their second amended petition against
these parties.  The Solanos filed their
original petition in March 2003 and an amended petition in April 2005; however,
neither pleading is contained in the clerk=s record on appeal. 





[6]Documents
submitted by appellant in her summary judgment response demonstrated that in
2002, the Tarrant County Health Department refused to approve the Solanos=
application for an on-site sewage disposal system at the Solanos=
property because the department was unable to Averify
the legal description of the property.@  In 2004, the department wrote the Solanos a
letter stating that there had been no change to the status of the application
because the property had not been Aproperly divided and
recorded.@  Appellant=s pleading indicated that the
inability to install a septic system was the principal reason that appellant=s
property was allegedly uninhabitable. 





[7]At
some point between the filing of their second amended petition in November 2005
and their summary judgment response in August 2006, the Solanos=
counsel withdrew.  The motion and order
regarding the withdrawal are not part of the record on appeal.





[8]Though
these motions are described by a letter appellant delivered to the trial court,
the majority of the motions are absent from our appellate record.  





[9]The
appeal was perfected for appellant, but not for Mr. Solano.   





[10]Though
appellees submitted evidence in support of their traditional motion for summary
judgment, we will not consider this evidence in reviewing the trial court=s
ruling on appellees= no
evidence motion.  See Binur v. Jacobo,
135 S.W.3d 646, 651 (Tex. 2004).  We will
also not consider for evidentiary purposes the lengthy written statements
submitted in appellant's response to that motion, because such statements are
not sworn to or otherwise qualified as summary judgment evidence.  See Tex. R. Civ. P. 166a(c), (f)
(delineating the available types of summary judgment evidence).  Instead, we will only consider the
documentary evidence attached to appellant=s response.  See Binur, 135 S.W.3d at 651.  





[11]Appellant
made claims on appeal and in her response to appellees=
summary judgment motions about various matters, including but not limited to
alleged improper disbursements, alleged improperly altered documents, and
alleged incorrect legal descriptions of the property submitted after closing
occurred.  These claims are unrelated to
the three claims pled against appellees, and we will not consider them in this
appeal. 





[12]A lis
pendens is a document which prevents a party to litigation from transferring an
interest in real property until the litigation is resolved.  See Tex. Prop. Code Ann. ' 12.007
(Vernon 2004); World Savings Bank, F.S.B. v. Gantt, 246 S.W.3d 299, 303
(Tex. App.CHouston
[14th Dist.] 2008, no pet.).





[13]We
note that the record fails to indicate that appellant has made any claim
against appellees for a violation of the title policy they issued.  This may be because the losses the Solanos
allegedly sustained may not have been 
covered under the policy.  Summary
judgment evidence submitted by appellant established that at closing, Mr.
Solano understood that his title insurance policy excluded Afrom
coverage loss caused by the exercise of governmental policy power or the
enforcement or violation of any law or government regulation, including
building and zoning ordinances and laws and division . . . and [he realized]
these could affect [his] ability to build improvements on the property.@  He therefore agreed to Ahold
harmless@
appellees if such conditions prohibited him Afrom using the . . . property
in any of the ways@ he
desired.  The actual title policy which
appellees issued contained similar excluding language.  Appellant=s pleading specifically
alleged that, resulting from the unplatted nature of the property, the harm the
Solanos suffered was that the Aconstruction of the home and
the type of permits needed for a home was prohibited by county ordinance and
city zoning laws.@   





[14]Our
holding in this regard is limited to the duties created within a title
insurance relationship, and we express no opinion here on whether other parties
to the Solanos=
transaction may have had a duty to disclose the unplatted nature of property
being purchased. 





[15]Though
appellant attached hundreds of pages of other documents to her summary judgment
response, she did not provide an adequate explanation through evidence as to
which of these documents Mr. Solano received prior to closing.  Because of this, and because the HUD
settlement statement is the only document specifically mentioned in appellant=s
pleading regarding the alleged misrepresentation of the status of the property,
we will focus on this document in our evaluation of this issue.    





[16]Again,
we express no opinion on whether any evidence exists that the Solanos may have
detrimentally relied on representations made by other parties to their
transaction.  We merely conclude that no
evidence was submitted to the trial court that demonstrated reliance on any
misrepresentation made by appellees.





[17]Although
no evidence was submitted in appellant=s summary judgment response
directly establishing that she was not at closing, attorneys for two defendants
acknowledged during a hearing that she was not present.  For the purposes of this appeal, we will
therefore assume that Mr. Solano signed appellant=s
name to closing documents, as she alleges. 





[18]Documents
submitted by appellant in her summary judgment response indicate instead that
near the time that closing occurred, the Solanos collectively intended to
finalize the transaction.  For instance,
in late March 2001, just a few weeks before closing occurred, Mr. Solano signed
a power of attorney authorizing appellant to act in his behalf in executing
documents related to the property.  Also
around that time, the Solanos jointly signed a waiver of the builder's
requirement to supply a list of subcontractors and suppliers upon the
commencement of construction at the property.